[No. 66525-1-I.   Division One.   July 2, 2012.]

*In the Matter of the Marriage of* CECIL T. HERRIDGE, *Appellant*, and STACEY A. HERRIDGE, *Respondent*.

*Paula M. Plumer*, for appellant.

*Christopher T. Lyons* (of *Truitt & Lyons*), for respondent.

¶1 DWYER, J. — The Servicemembers Civil Relief Act[1] (SCRA or Act) entitles a member of the United States armed services to a mandatory stay of court proceedings in circumstances where the servicemember is precluded from participating in such proceedings due to active military duty. However, in order to be entitled to such a stay, the servicemember must present to the court certain statutorily specified information regarding his or her military duty. Where the servicemember fails to do so, the SCRA does not entitle the servicemember to this relief. Although the court may issue a stay of proceedings on its own motion, such a stay is discretionary.

¶2 Here, Cecil Herridge appeals from the trial court's denial of his motion to vacate a final order of child support. He asserts that the trial court was required to issue a stay of proceedings pursuant to the SCRA and that the child support order, issued in his absence, should have been

---

[1] 50 U.S.C. app. §§ 501-597b.

subsequently vacated. However, because Cecil[2] failed to provide to the trial court the statutorily required information regarding his military duty, the court did not err by determining that he had not met the prerequisites for a mandatory stay. Nor did the trial court abuse its discretion by declining to issue a stay on its own motion. Accordingly, Cecil's motion to vacate on this basis was properly denied. Because Cecil's other contentions similarly lack merit, we affirm the trial court's order denying Cecil's motion to vacate the child support order.

I

¶3 Following the dissolution of the marriage of Stacey and Cecil Herridge, a final order of child support and a final parenting plan were entered in December 2004. In April 2008, Stacey, who was residing in Florida with their two children, filed a petition to modify both the parenting plan and the order of child support. The trial court subsequently issued a temporary order of child support and a temporary parenting plan.

¶4 Cecil, who is a member of the United States Navy, thereafter filed a motion requesting a deviation in the temporary order of child support. He additionally requested that the court disqualify Stacey's attorney based upon Cecil's prior consultation with that attorney regarding the calculation of child support payments. The court denied the motion for disqualification without written explanation but granted Cecil's request for a deviation in the temporary order of child support.[3]

¶5 In the months that followed, Cecil repeatedly failed to comply with Stacey's requests for discovery. He did not respond to her interrogatories or requests for production,

---

[2] In order to avoid confusion, the parties are referred to by their first names throughout this opinion.

[3] The attorney thereafter continued in his representation of Stacey and now represents her in this appeal.

failing to provide information regarding the income of his current wife or income derived from his military employment. Stacey thereafter filed a motion to compel discovery. In response to this motion, Cecil's wife filed a declaration indicating that her husband was deployed and requesting that the motion be denied due to his absence. Although Cecil had deployed well after his responses to discovery were due, Stacey voluntarily struck the motion to compel.

¶6 Cecil returned from deployment in March 2009. However, he did not thereafter respond to discovery or otherwise take action in the case. Instead, in November 2009, Stacey filed a motion for a final hearing on her petition to modify the final parenting plan and order of child support. The motion was noted for November 16, 2009.

¶7 Cecil received a copy of the motion on November 3, 2009. Three days later, he filed a response. In his declaration, Cecil stated that he would be unable to attend the hearing because he would "be deployed at that time over seas [sic]." He also attached a redacted letter from his commanding officer. The letter, dated October 30, 2009, stated, "A01 Herridge is an active member of the U.S. Navy and attached to [redacted]. He will be deployed November 2009 to June 2010." The entire second paragraph of this letter was redacted.[4] No other information was provided in the letter.

¶8 Cecil deployed to Iraq on November 13, 2009. Accordingly, he did not appear at the November 16 hearing. In his absence, Stacey delivered copies of Cecil's declaration and his commanding officer's letter to the trial court for evaluation. While recognizing that the SCRA requires a stay of proceedings upon the proper application of a servicemember, the trial court determined that Cecil had failed to comply with the relevant provisions of the Act. The court further noted, "It appears to me that Mr. Herridge is using

---

[4] Cecil stated in his declaration that sections of the letter had been redacted because "the contact info is null and void [because] we will be deployed and when Mrs. Herridge has my command contact she harasses them."

his status as a military member to try to get out of his responsibilities." The court then entered final orders modifying the child support order and the final parenting plan.

¶9 Cecil did not appeal from the trial court's final orders. Instead, in December 2009, he filed a motion to vacate the final orders. Because Cecil was still deployed, he did not appear at the hearing on this motion. Cecil's wife sought to argue on his behalf; however, the court denied this request. After noting that it had carefully considered the record, the trial court determined that the time for reconsideration had elapsed and that Cecil had failed to comply with the proper procedures for bringing a motion to vacate. The trial court further stated, "The Court was well within its authority and discretion to enter the previous order. Mr. Herridge did not comply with the Servicemembers Civil Relief Act in seeking the stay previously." Moreover, because Cecil's motion was "not supported by any proper factual investigation," the court awarded terms of $500 for attorney fees to Stacey pursuant to Civil Rule 11.

¶10 Cecil took no further action until September 2010 when he filed a motion to vacate the November 2009 final orders and the December 2009 award of attorney fees.[5] Following oral argument, the trial court issued a written order including findings of fact and conclusions of law. The court reiterated that, because Cecil had not complied with the provisions of the SCRA, he was not entitled to a mandatory stay of the November 2009 hearing. Moreover, the trial court determined that Cecil was not prejudiced by its previous decision to modify the child support order based only upon declarations—because Cecil had failed to timely request that oral testimony be heard, the petition for modification "was properly heard on affidavits only, pursu-

---

[5] Cecil did, however, refuse to pay the modified child support, as ordered by the trial court in November 2009.

ant to [former] RCW 26.09.175(5) [(2002)]."[6] Accordingly, the court denied the motion to vacate the final order modifying child support. The trial court likewise determined that the December 2009 judgment awarding attorney fees was proper, as the court in that proceeding had correctly determined that "there was no basis in law or fact to grant Mr. Herridge's motion."

¶11 However, the trial court granted Cecil's motion to vacate the final parenting plan entered at the November 2009 hearing, explaining that "Mr. Herridge was entitled to an evidentiary hearing on the modification of the parenting plan." Because Cecil was entitled to this partial relief, the trial court did not award the full amount of attorney fees requested by Stacey, instead limiting its award of such fees to $750.

¶12 Cecil appeals.

II

¶13 Cecil first asserts that the trial court was required to issue a stay of proceedings pursuant to the SCRA and, thus, that the trial court's subsequent orders, issued in his absence, should necessarily have been vacated. We disagree.

¶14 "A motion to vacate a judgment is to be considered and decided by the trial court in the exercise of its discretion, and its decision should be overturned on appeal only if it plainly appears that it has abused that discretion." *Haller v. Wallis*, 89 Wn.2d 539, 543, 573 P.2d 1302 (1978). A trial court abuses its discretion if its decision is manifestly unreasonable or based on untenable grounds or reasons. *In re Marriage of Littlefield*, 133 Wn.2d 39, 47, 940 P.2d 1362 (1997). Moreover, a court necessarily abuses its discretion

---

[6] Former RCW 26.09.175(5) (2002) states that "[u]nless both parties stipulate to arbitration or the presiding judge authorizes oral testimony pursuant to subsection (6) of this section, a petition for modification of an order of child support shall be heard by the court on affidavits, the petition, answer, and worksheets only."

where it bases its ruling "on an erroneous view of the law." *Wash. State Physicians Ins. Exch. & Ass'n v. Fisons Corp.*, 122 Wn.2d 299, 339, 858 P.2d 1054 (1993). We review questions of law de novo. *Anthis v. Copland*, 173 Wn.2d 752, 755, 270 P.3d 574 (2012).

¶15 Here, the trial court's denial of Cecil's motion to vacate depended upon the court's previous interpretation and application of the SCRA. In interpreting a statute, "[c]ourts should assume [Congress] means exactly what it says." *State v. Keller*, 143 Wn.2d 267, 276, 19 P.3d 1030 (2001) (citing *W. Telepage, Inc. v. City of Tacoma Dep't of Fin.*, 140 Wn.2d 599, 609, 998 P.2d 884 (2000)). Plain words do not require construction. *Keller*, 143 Wn.2d at 276. Moreover, meaning must be given to every word in a statute. *In re Recall of Pearsall-Stipek*, 141 Wn.2d 756, 767, 10 P.3d 1034 (2000).

¶16 The purpose of the SCRA "is to suspend enforcement of civil liabilities of persons in the military service of the United States in order to enable such persons to devote their entire energy to the defense needs of the Nation." *Engstrom v. First Nat'l Bank of Eagle Lake*, 47 F.3d 1459, 1462 (5th Cir. 1995); 50 U.S.C. app. § 502. The provisions of the Act are to be "liberally construed." *Engstrom*, 47 F.3d at 1462. Nevertheless, the Act "is not to be used as a sword against persons with legitimate claims," and a court must give "equitable consideration of the rights of parties to the end that their respective interests may be properly conserved." *Engstrom*, 47 F.3d at 1462; *see also Runge v. Fleming*, 181 F. Supp. 224, 228 (N.D. Iowa 1960) (noting that the Act is not intended as an " 'instrument for the oppression of opposing parties' " (quoting *State ex rel. Swanson v. Heaton*, 237 Iowa 564, 566, 22 N.W.2d 815 (1946))).

¶17 Where a servicemember has received notice of an action or proceeding,[7] a stay may be obtained "[a]t any stage before final judgment in a civil action or proceeding" either

---

[7] Cecil concedes that he had notice of the proceeding at issue.

"upon application by the servicemember" or by the court "on its own motion." 50 U.S.C. app. § 522(b)(1). In order to obtain a stay by application, however, the application must include the following:

> (A) A letter or other communication setting forth facts stating the manner in which current military duty requirements materially affect the servicemember's ability to appear and stating a date when the servicemember will be available to appear.
>
> (B) A letter or other communication from the servicemember's commanding officer stating that the servicemember's current military duty prevents appearance and that military leave is not authorized for the servicemember at the time of the letter.

50 U.S.C. app. § 522(b)(2). Where a servicemember has made proper application for a stay of proceedings, a 90-day stay is mandatory. 50 U.S.C. app. § 522(b)(1). It is within a court's discretion to issue a stay where the servicemember has not complied with the provisions of the statute. *In re Marriage of Bradley*, 282 Kan. 1, 7, 137 P.3d 1030 (2006).

¶18 Here, Cecil asserts that he complied with the requirements of the Act by (1) explaining in writing that he would be unavailable to appear at the November 2009 hearing because he would "be deployed at that time over seas [sic]" and (2) attaching a copy of a letter from his commanding officer indicating that Cecil would be "deployed November 2009 to June 2010." However, Cecil does not dispute that his letter to the court did not state a date upon which he would be available to appear. Nor does he contend that the letter from his commanding officer apprised the trial court of the availability of military leave to Cecil at the time of the letter. Instead, he asserts that, pursuant to a liberal construction of SCRA, his request for a stay was sufficient.

¶19 Cecil is correct that, pursuant to a former version of the SCRA, a bare assertion of active military service was, in some instances, determined to be sufficient for a mandatory

stay.[8] *See, e.g., Parker v. Parker*, 207 Ga. 588, 589, 63 S.E.2d 366 (1951). Such a stay of proceedings was required where (1) the servicemember (or a person on his or her behalf) applied for the stay and (2) the court determined that the servicemember's ability to prosecute or defend the action was, in fact, materially affected by reason of his or her military service. Former 50 U.S.C. app. § 521 (1940). The former statute was silent regarding what proof was necessary to demonstrate an adverse and material effect on the servicemember. Although a mere showing of active military duty was deemed insufficient, *Boone v. Lightner*, 319 U.S. 561, 575, 63 S. Ct. 1223, 87 L. Ed. 1587 (1943), stays were generally granted where the servicemember produced some evidence establishing that the duties of military service would have a significant effect on his or her ability to comply with the legal obligation in question. *See, e.g., Chaffey v. Chaffey*, 59 Cal. 2d 792, 796-98, 382 P.2d 365, 31 Cal. Rptr. 325 (1963).

¶20 However, Congress substantially amended the Act in 2003. As discussed above, the SCRA now mandates that an application for a stay by a servicemember contain specific information in support of that request. 50 U.S.C. app. § 522. Although no Washington court has yet considered the issue, those courts that have assessed the effect of the 2003 amendments have generally held that a servicemember must now comply with the express requirements of that statute in order to be entitled to a mandatory stay of proceedings. *See, e.g., Teas v. Ferguson*, No. 07-5146, 2007 WL 4106290, 2007 U.S. Dist. LEXIS 86901 (W.D. Ark. 2007) (motion for stay denied where application did not meet statutory requirements); *King v. Irvin*, 273 Ga. App. 64, 614 S.E.2d 190 (2005) (mandatory stay not required where no statement from commanding officer); *Bradley*, 282 Kan. 1 (same); *In re Walter*, 234 S.W.3d 836 (Tex. App. 2007) (same). Thus, a stay of proceedings is mandatory only

---

[8] Prior to 2003, the SCRA was titled the Soldiers' and Sailors' Civil Relief Act of 1940.

where "the motion includes the information required by the statute for the court to determine whether a stay is needed." MARK E. SULLIVAN, AM. BAR ASS'N, *A Judge's Guide to the Servicemembers Civil Relief Act* 3, *available at* http://apps .americanbar.org/family/military/scrajudgesguidecklist.pdf (last visited June 18, 2012).

¶21 For instance, in *City of Pendergrass v. Skelton*, 278 Ga. App. 37, 628 S.E.2d 136 (2006), a servicemember submitted a letter from his commanding officer that stated:

> "Skelton is a member of my command and is currently attending training at Fort Irwin, CA until 30 April 2005. Due to the circumstances of training [Specialist] Skelton is unable to attend any legal proceedings."

*Skelton*, 628 S.E. 2d at 138. The trial court granted a stay until the end of Skelton's active duty obligations, and the appellate court reversed. Noting that Congress had amended the Act to require that specific information be included within an application for a mandatory stay, the appellate court determined that this letter was insufficient to meet the requirements of the SCRA. *Skelton*, 628 S.E.2d at 140. Although issuance of a limited stay was appropriate, Skelton's application for a more extensive stay of proceedings was insufficient because it did not address the availability of military leave following the conclusion of the specified training. *Skelton*, 628 S.E.2d at 140.

¶22 We recognize that some courts have continued to overlook deficiencies in a servicemember's application in determining that a stay of proceedings is warranted even in the absence of compliance with the express language of the statute. *See, e.g., In re Amber M.*, 184 Cal. App. 4th 1223, 1230, 110 Cal. Rptr. 3d 25 (2010). However, although such an approach was proper under the former version of the Act, it does not honor the plain words of the statute or recognize Congress's purposes in amending the SCRA. Where Congress has expressly stated that specific information must be included in an application for a mandatory

stay, it must be assumed that it meant what it said. *Keller,* 143 Wn.2d at 276. Moreover, although the primary purpose of the SCRA is the protection of servicemembers, the new requirements (which clearly burden servicemembers) reflect Congress's concerns with the rights of opposing parties and the efficient administration of judicial proceedings. As a result of the 2003 amendments, a servicemember must indicate his or her future availability for further proceedings and must provide actual proof that he or she is truly unavailable to defend or prosecute an action as a result of his or her military duties. 50 U.S.C. app. § 522(b).

¶23 In amending the SCRA, Congress struck a careful balance between competing policy concerns. We must respect that determination and, accordingly, hold that a servicemember must fully comply with the express language of the SCRA before a stay of proceedings is mandated.

¶24 Here, it is clear that the information provided by Cecil to the trial court prior to the November 2009 hearing did not comply with the requirements of the SCRA. Cecil did not state a time at which he would again be available to appear, nor did his commanding officer's letter indicate that military leave would be unavailable to Cecil during his deployment.[9] Because Cecil's application did not comply with the express language of the SCRA, the trial court properly denied Cecil's request for a mandatory stay.[10]

¶25 Nor did the trial court abuse its discretion by declining to issue a stay on its own motion. Although a stay

---

[9] Although the trial court later received two additional letters from officers of Cecil's command containing more extensive information regarding his deployment, the court's orders modifying the order of child support and the final parenting plan were entered prior to the submittal of these letters. Accordingly, there were no proceedings to stay at the time the court received this additional information.

[10] Cecil additionally contends that the trial court erred by finding that Cecil waived reliance on the SCRA by filing his motion to vacate in December 2009. Because the court's ultimate decision to deny Cecil's 2010 motion to vacate did not depend upon this reasoning, however, any such error was harmless.

of proceedings is mandatory upon a properly supported application by the servicemember, a court may also grant a stay "on its own motion." 50 U.S.C. app. § 522(b)(1). As the Kansas Supreme Court has explained, the statute "does not address what standard is to be applied by a trial court in considering whether to stay an action upon a service-member's application that does not meet the statutory conditions." *Bradley*, 282 Kan. at 7. "In the absence of governance by the federal statute," the applicable standard is properly a matter of state law. *Bradley*, 282 Kan. at 7; *see also In re Amber M.*, 184 Cal. App. 4th at 1231. In Washington, "[a] court's determination on a motion to stay proceedings . . . is discretionary, and is reviewed only for abuse of discretion." *King v. Olympic Pipe Line Co.*, 104 Wn. App. 338, 348, 16 P.3d 45 (2000); *see also* SULLIVAN, *supra*, at 17 (stay of proceedings is "discretionary on court's own motion").

¶26 Here, the trial court did not abuse its discretion by declining to issue a stay with respect to Stacey's motion to modify the child support order. Where a court is "sufficiently convinced that a stay is necessary to avoid undue prejudice to a party's prosecution [or defense] of a matter," a discretionary stay may be warranted. *Keane v. McMullen*, No. C 07-04894 SBA, 2009 WL 331455, at *3, 2009 U.S. Dist. LEXIS 10389, at *10 (N.D. Cal. Feb. 11, 2009). No such situation was presented here. As the trial court correctly noted, unless "the presiding judge authorizes oral testimony . . . a petition for modification of an order of child support shall be heard by the court on affidavits, the petition, answer, and worksheets only." Former RCW 26.09-.175(5). Cecil had ample opportunity to request oral testimony on this petition but did not. Moreover, Cecil received adequate time to file declarations to be considered by the court in ruling on the motion for modification of child support. As the court explained, the last date for Cecil to file such declarations was "three days before his deployment date."

¶27 Under these circumstances, the trial court was authorized to modify the order of child support without hearing oral testimony. Former RCW 26.09.175(5). Accordingly, Cecil's rights were not prejudiced by the entry of the final order in his absence.[11] Thus, the trial court did not err by determining, when ruling on Cecil's motion to vacate, that it had not been required to issue a stay of proceedings on its own motion.[12] The trial court properly denied Cecil's motion to vacate the final order of child support.

¶28 The remainder of this opinion has no precedential value. It will, therefore, be filed for public record in accordance with the rules governing unpublished opinions.

LEACH, C.J., and APPELWICK, J., concur.

---

[11] In contrast, by granting Cecil's motion to vacate the final parenting plan, the trial court recognized that the denial of a stay with respect to that matter compromised Cecil's rights, in that he was entitled to an evidentiary hearing on that request.

[12] Cecil's assertion that the trial court erred by declining to appoint counsel in his absence is also without merit. Although the SCRA requires that a court appoint counsel where an *additional* stay of proceedings is denied, this provision applies only to those cases where an initial stay was granted. 50 U.S.C. app. § 522(d)(2). Because the trial court did not grant an initial stay, the provision does not apply.

Insofar as Cecil challenges the denial of his motion to vacate based on the merits of the trial court's decision to modify the order of child support, this determination is reviewed for abuse of discretion. *In re Marriage of Pollard*, 99 Wn. App. 48, 52, 991 P.2d 1201 (2000). The trial court did not err by denying Cecil's request for a whole family deviation, given that Cecil repeatedly failed to provide financial information concerning his wife's income or the child support she receives. Nor did the trial court grant relief that was beyond the scope of the relief requested in Stacey's petition—a request for modification of the order for child support was clearly encompassed within her pleading.