FILED
COURT OF APPEALS
DIVISION II

2014 JUL 15 AM 10: 43

STATE OF WASHINGTON

BY_____
DEPUTY

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| In re the Marriage of:<br><br>PAUL DAVID SHOEMAKER,<br><br>          Appellant,<br><br>and<br><br>DAWN MARIE SHOEMAKER,<br><br>          Respondent. | No. 43633-7-II<br><br><br><br>UNPUBLISHED OPINION |

MELNICK, J. — Paul David Shoemaker appeals the orders filed in this dissolution proceeding, arguing that the trial court (1) lacked the personal and subject matter jurisdiction necessary to enter the orders, (2) lacked sufficient evidence to impose the parenting plan restrictions against him, and (3) violated his due process right to a fair trial. Shoemaker also seeks to supplement the record on appeal, and in his reply brief requests an award of fees, costs, and sanctions against his former wife, now known as Dawn Marie Harris. Harris requests fees and costs on appeal. Because Shoemaker sought relief from the Kitsap County Superior Court and is a resident of Washington as well as a member of the armed forces stationed in Washington, the superior court had personal and subject matter jurisdiction in this case. We see no violation of Shoemaker's right to a fair trial on this record. We deny his motion to supplement the record as well as his untimely request for fees, costs, and sanctions, and we grant Harris's request for fees based on Shoemaker's intransigence. Affirmed.

## FACTS

The parties married in Tacoma in 2004, shortly after the birth of their son, E.S. During the proceedings at issue, Shoemaker was a member of the United States Air Force.[1] On March 16, 2006, Shoemaker filed a petition for legal separation in Kitsap County, stating that "this court has jurisdiction over [Harris] because [Harris and Shoemaker's] home state of record is Washington." Clerk's Papers (CP) at 704. Harris subsequently filed a dissolution petition in Pierce County, and Shoemaker obtained an ex parte order and temporary parenting plan in Kitsap County that granted him temporary custody of E.S.

In June 2006, the parties signed an agreed order that dismissed Harris's Pierce County dissolution petition, continued Shoemaker's legal separation action filed in Kitsap County, and reaffirmed the temporary parenting plan. The order further stated that the parties were moving to Utah and were attempting to reconcile. The parties then moved together to Utah.

In February 2008, the Kitsap County court dismissed the case for want of prosecution. In 2009, the parties and their son moved to Japan where Shoemaker was deployed. After approximately a year, Harris wanted to end the marriage and tried to file the necessary paperwork to return to the United States with E.S. On September 10, 2010, Shoemaker obtained an ex parte order reinstating the dissolution case and again declaring that the Kitsap County court had jurisdiction because Kitsap County was his "designated home even though he is assigned out of state and out of the country by the military." CP at 705. In an attached declaration, Shoemaker stated that his "home address of record" was in Bremerton. CP at 355.

---

[1] In a recent affidavit, Shoemaker states that he was medically discharged on June 3, 2013.

2

Unbeknownst to Harris, the ex parte order also reactivated the temporary parenting plan. Based on this ex parte order, Shoemaker attempted to have Harris removed from the house and took custody of their son.

On October 20, 2010, Harris obtained an ex parte restraining order placing E.S. in her custody and authorizing her to take E.S. if she had to leave Japan. On October 25, 2010, a temporary restraining order issued prohibiting either party from taking E.S. out of Japan without further court order. On October 29, 2010, an agreed parenting plan was signed granting Harris custody and giving Shoemaker alternate weekends and splitting holidays. The order stipulated that E.S. could not leave Japan without further order. The court issued a contemporaneous restraining order enjoining each party from disturbing the peace of the other party or any child. This court denied discretionary review of the order denying Shoemaker's motion for reconsideration. By this time, Shoemaker had fired two attorneys and represented himself.

In January 2011, Shoemaker began harassing Harris and refusing to return E.S. after weekend visits. On one occasion he failed to return E.S. for over two weeks. Shoemaker threatened to move back into Harris's house and several times came over and refused to leave. Shoemaker cancelled Harris's cell phone and internet service. The trial court described his behavior as "increasingly odd, hostile, and bizarre." CP at 705. On January 20, 2011, the Air Force issued a no contact order forbidding Shoemaker from having any contact with Harris or their son.

On February 11, 2011, the Kitsap County court held Shoemaker in contempt for violating the 2010 parenting plan and restraint provisions but provided purge provisions. With court permission, Harris took E.S. out of Japan. The court further ordered Shoemaker to give Harris the child's passport and any other documents necessary to remove him from Japan. The court

3

also issued a warrant for Shoemaker's arrest and ordered him to pay child support and maintenance.

Despite the court orders and orders from his commanding officer, Shoemaker failed to cooperate and did not provide Harris with E.S.'s passport. Harris, stranded in Japan, left only after Shoemaker's commanding officer personally gave her the child's passport. Shoemaker also refused to comply with the orders to pay Harris child support, maintenance, and attorney fees.

Following an investigation of two separate incidents, an Air Force commander issued reports finding that Shoemaker's behavior met the criteria for "child emotional maltreatment" and "adult emotional maltreatment." CP at 706. On March 10, 2011, Shoemaker was arrested after failing to appear to show cause why he should not be held in contempt of court. After posting bail, he was booked and released.

On March 31, 2011, Shoemaker filed for divorce in Utah. The Utah court dismissed the action and stated in its order that Washington State had exclusive and continuing jurisdiction. This order was upheld on appeal. *Shoemaker v. Shoemaker*, 265 P.3d 850 (Utah Ct. App. 2011). A federal district court subsequently dismissed two lawsuits Shoemaker filed against Harris, several Kitsap County judges, multiple Kitsap County employees, and several other parties.

On August 19, 2011, the Kitsap County court granted an order compelling Shoemaker to respond to Harris's interrogatories and request for production of documents, and also awarded terms. Shoemaker never complied with this order. At a settlement conference on December 7, 2011, Harris and her attorney appeared in person and Shoemaker appeared telephonically. Notice of the trial date was sent to Shoemaker's last three known addresses.

Shoemaker did not appear when the trial began on Monday, March 5, 2012. His mother informed the court that Shoemaker had been denied permission to leave Fort Lewis for any court hearings during the past year and that he was being taken to the Fort Lewis Clinic for heart tests. The court observed that Shoemaker had received notice of the trial date and had appeared at prior hearings within the past year. The court also noted that there was no verification of his whereabouts. The court allowed the case to proceed by default, and Harris testified. Before adjourning for the day, the court informed Shoemaker's mother that trial would resume the next morning and that Shoemaker could either appear or provide verification from military personnel that a medical condition had prevented his appearance on the first day of trial. When Harris's attorney explained that his client would be returning to New York on Thursday and asked for completion of the trial by then, the court reconfirmed that the trial would resume the following morning.

Shoemaker did not appear for court the next morning. When his mother asserted that he had been confined to quarters for 48 hours due to "severe medical stress," Harris's attorney responded that Shoemaker had not sought medical treatment until 5:00 P.M. the previous day. CP at 695. The trial judge spoke with a military officer who confirmed that Shoemaker had been confined to quarters for 48 hours.[2] After Harris completed her testimony, the court continued the trial to March 14 and ruled that Harris would be allowed to appear telephonically due to Shoemaker's unexcused absence the previous day.

---

[2] The order showed that Shoemaker was confined to quarters from 7:00 A.M. on March 6 through 7:00 A.M. on March 8.

Shoemaker appeared on March 14 and testified on his own behalf. Although he challenged the court's jurisdiction, he admitted during cross examination that he had a current Washington driver's license and that he had signed court filings stating that his home of record was Kitsap County. Shoemaker's mother also testified.

The trial court subsequently issued a lengthy memorandum decision setting forth the above facts and ruling that it had jurisdiction over Shoemaker because of his efforts to seek Washington jurisdiction. The court also ruled that Shoemaker's residential time with E.S. would be restricted to allow only written communication monitored by Harris. The court left the restraining order in place because Shoemaker had withheld E.S. from Harris in violation of court orders and had stalked, intimidated, and harassed Harris.

The court found no evidence that either party's income had changed since entry of the temporary decree of dissolution and noted that Shoemaker had refused to comply with repeated discovery requests seeking current financial information. The court ordered Shoemaker to pay approximately $25,000 in unpaid child support and maintenance, and it based his ongoing child support obligation on the 2010 information he had provided earlier. The court awarded Harris $45,000 in attorney fees based on Shoemaker's intransigence and bad faith, and it imposed sanctions of $9,250 for Shoemaker's failure to provide discovery.

Shoemaker now appeals.

## ANALYSIS

### I. JURISDICTION

Shoemaker argues that the Kitsap County court lacked both personal and subject matter jurisdiction because neither the parties nor their son have lived in Washington since 2006.

6

Jurisdiction is an issue of law that we review de novo. *Worden v. Smith*, 178 Wn. App. 309, 328, 314 P.3d 1125 (2013); *Cole v. Harveyland, LLC*, 163 Wn. App. 199, 205, 258 P.3d 70 (2011). Jurisdiction is the power of a court to hear and determine a case and consists of personal and subject matter jurisdiction. *In re Marriage of Buecking*, 179 Wn.2d 438, 447, 316 P.2d 999 (2013).

Shoemaker possesses a Washington driver's license and has alleged that Washington is his home state in his petition and subsequent pleadings. Moreover, when the Kitsap County court dismissed the dissolution proceeding in 2008 for want of prosecution, Shoemaker moved to have the petition reinstated. Because Shoemaker sought its jurisdiction on multiple occasions, the Kitsap County court had personal jurisdiction over him. *See Worden*, 178 Wn. App. at 328 (party can consent to personal jurisdiction in an action by taking action that fairly invites the court to resolve a dispute between it and another party).

The trial court found that it had personal jurisdiction over Harris because (1) the parties lived in Washington during their marriage; (2) Shoemaker continues to reside, or be a member of the armed forces stationed, in this state; and (3) the parties may have conceived a child while in Washington. As the long-arm statute provides, such contacts submit a nonresident to the jurisdiction of Washington courts. RCW 4.28.185(1)(e), (f). The court had personal jurisdiction over both parties.

A court has subject matter jurisdiction if it can hear a particular class of case. *Buecking*, 179 Wn.2d at 448. The Washington Constitution grants superior courts original jurisdiction in divorce matters. WASH. CONST. article IV, § 6; *Buecking*, 179 Wn.2d at 449-50. RCW 26.09.030 adds a residency requirement to this exercise of jurisdiction by requiring a party who files a dissolution petition to be (1) a resident of this state, (2) a member of the armed forces who

7

is stationed in this state, or (3) married to a party who is a resident of this state or a member of the armed forces and stationed in this state. *In re Marriage of Robinson*, 159 Wn. App. 162, 168, 248 P.3d 532 (2010) (quoting RCW 26.09.030); *see Buecking*, 179 Wn.2d at 452 (residency requirement of RCW 26.09.030 must be met for court to exercise jurisdiction over dissolution proceeding). Shoemaker is a resident of this state as well as a member of the armed forces stationed in Washington. The court had subject matter jurisdiction over these proceedings.

Shoemaker makes several references to the Uniform Child Custody Jurisdiction and Enforcement Act (UCCJEA) in challenging the court's jurisdiction. As the Supreme Court has explained,

> The UCCJEA arose out of a conference of states in an attempt to deal with the problems of competing jurisdictions entering conflicting interstate child custody orders, forum shopping, and the drawn out and complex child custody legal proceedings often encountered by parties where multiple states are involved. It is, in a sense, a pact among states limiting the circumstances under which one court may modify the orders of another.

*In re Custody of A.C.*, 165 Wn.2d 568, 574, 200 P.3d 689 (2009) (footnote omitted) (internal citations omitted). The UCCJEA is not at issue because no other state is attempting to modify the orders issued in this case.

Shoemaker also refers to the divisible divorce doctrine, which recognizes that divorce proceedings typically contain two components: the dissolution of the marital status and the adjudication of the "incidences" of the marriage. *Kelly v. Kelly*, 759 N.W.2d 721, 723 (N.D. 2009); 20 KENNETH WEBER, WASHINGTON PRACTICE: FAMILY AND COMMUNITY PROPERTY LAW, § 30.4, at 16 (1997). Each component has a separate jurisdictional foundation. *Kelly*, 759 N.W.2d at 723. While a court need not have personal jurisdiction over both parties to dissolve the marriage, it must have personal jurisdiction over both parties to adjudicate matters of

alimony or spousal support, the division of property, the right to child custody, and an award of child support. *Kelly*, 759 N.W.2d at 723; 20 WASH. PRAC., § 30.4, at 16. Other states need not recognize orders adjudicating the latter matters where the entering court lacked personal jurisdiction over one of the parties. *Conlon v. Schweiker*, 537 F. Supp. 158, 162 (N.D. Tex. 1982). The divisible divorce doctrine is not relevant here because the trial court had personal jurisdiction over both parties.

II.     PARENTING PLAN AND CHILD SUPPORT

Shoemaker next challenges the sufficiency of the evidence supporting the parenting plan restrictions as well as the award of child support.

We begin our review by observing that trial court decisions in dissolution proceedings will seldom be changed on appeal. *In re Marriage of Booth*, 114 Wn.2d 772, 776, 791 P.2d 519 (1990). Such decisions will be upheld unless they demonstrate a manifest abuse of discretion. *In re Marriage of Landry*, 103 Wn.2d 807, 809, 699 P.2d 214 (1985).

In fashioning a parenting plan, the court's discretion must be guided by several provisions of the Parenting Act of 1987 (ch. 26.09 RCW), including RCW 26.09.191. *In re Marriage of Katare*, 175 Wn.2d 23, 35-36, 283 P.3d 546 (2012), *cert. denied*, 133 S. Ct. 889 (2013). This statute requires a court to limit a parent's residential time with the child if that parent has engaged in physical, sexual, or emotional abuse of the child or if that parent's conduct may have an adverse effect on the child's best interests. RCW 26.09.191(1), (2), (3).

The trial court found that restrictions on Shoemaker's residential time with his son were required because Shoemaker had engaged in the following conduct:

> Willful abandonment that continues for an extended period of time or substantial refusal to perform parenting functions[.]
>
> Physical, sexual or a pattern of emotional abuse of a child.
>
> A history of acts of domestic violence . . . or an assault or sexual assault which causes grievous bodily harm or the fear of such harm.

CP at 713 (paragraph 2.1). The court also found that Shoemaker's conduct might adversely affect the child's best interests because the following factors existed:

> Neglect or substantial nonperformance of parenting functions.
>
> A long-term emotional or physical impairment which interferes with the performance of parenting functions[.]
>
> The absence or substantial impairment of emotional ties between the parent and child.
>
> The abusive use of conflict by the parent which creates the danger of serious damage to the child's psychological development.

CP at 713 (paragraph 2.2). Based on these findings, the trial court ruled that it would allow Shoemaker only written communication with E.S., subject to Harris's monitoring.

In its memorandum decision, the court stated that the testimony and record provided ample evidence to support its findings in paragraphs 2.1 and 2.2 of the parenting plan. The court then described some of the evidence demonstrating why Shoemaker's residential time with his son would be completely restrained:

> On October 29, 2010, a temporary parenting plan was issued, establishing [Harris] as the primary residential parent for the minor child. On January 20, 2011, [Shoemaker's] Air Force Commander issued him a no contact order, forbidding him from contacting either [Harris] or the minor child. On February 11, 2011, [Shoemaker] was held in contempt of court after he violated the visitation provisions of the temporary parenting plan in effect at that time and withheld the minor child from [Harris]. Because of this violation, a temporary restraining order also was entered against him, proscribing any contact between [Shoemaker] and his child and between [Shoemaker] and [Harris]. On February 15, 2011, a second of [Shoemaker's] Air Force Commanders issued a determination finding

that an investigation of [Shoemaker's] conduct met the criteria for both "child emotional maltreatment" and "adult emotional maltreatment." [Shoemaker's] behavior, exhibited during the course of this case and in his personal interactions with [Harris] and minor child, reflects a pattern of harmful, malicious, and abusive decisions.

CP at 708.

Shoemaker now argues that the evidence is insufficient to support the court's restrictions on his contact with E.S. We cannot review this argument, however, because Shoemaker has not provided a transcript of Harris's testimony. A party seeking review has the burden of perfecting the record so that this court has before it all of the evidence relevant to the issue. *Dash Point Village Assoc. v. Exxon Corp.*, 86 Wn. App. 596, 612, 937 P.2d 1148 (1997). Even though the entire record is not required, "those portions of the verbatim report of proceedings necessary to present the issues presented on review" must be provided to the court. *Dash Point Village Assoc.*, 86 Wn. App. at 612 (quoting RAP 9.2(b)). Harris's testimony is essential to any review of the trial court's residential restrictions. Because Shoemaker has not met his burden of perfecting the record so that we may review his argument, we will not consider it further.

Shoemaker also challenges the competency of the evidence supporting the child support order. In its memorandum decision, the trial court noted that the proposed child support order mirrored the temporary child support order. There was no evidence that either party's income had changed; Shoemaker had refused to comply with repeated discovery requests, as well as an order to compel, that sought required financial information. The court therefore listed Shoemaker's income according to the 2010 information he had provided for purposes of the temporary child support order.

11

RCW 26.19.071(1) provides that "[a]ll income and resources of each parent's household shall be disclosed and considered by the court when the court determines the child support obligation of each parent." If a parent fails to supply this information, the court must impute income to that parent. RCW 26.19.071(6). Given Shoemaker's refusal to meet his statutory obligation and to comply with related discovery requests and court orders, we see no abuse of discretion in the trial court's decision to calculate child support based on the initial income information he provided.

## III. DUE PROCESS

Shoemaker argues further that he was denied his due process right to a fair trial for several reasons. Here again, the lack of a complete record hampers our analysis.

Several of Shoemaker's complaints stem from the trial court's decision to proceed with Harris's testimony in his absence. As the clerk's minutes illustrate, Shoemaker did not notify the court that he would be absent on March 5, the first day of trial. His mother informed the court after the hearing began that Shoemaker did not have permission to leave his base for court hearings. When Harris's attorney responded that Shoemaker had been returned from Japan so that he could appear at trial, his mother told the court that he was being taken to a clinic for heart tests. Because Shoemaker had provided no verification that a medical condition prevented his appearance, the court allowed Harris to testify.

The clerk's minutes reveal that the following day, Shoemaker's mother informed the court that Shoemaker was under medical stress and confined to quarters for 48 hours. The court eventually spoke to a sergeant who confirmed that Shoemaker had been confined to quarters for 48 hours. The court allowed Harris to complete her testimony but continued further trial proceedings to March 14.

When Shoemaker appeared on March 14, he complained that he had not had a chance to review Harris's exhibits. The court responded that a copy of her exhibits had been left for Shoemaker in court; Shoemaker's mother apparently had refused to take them. Harris's attorney added that Shoemaker could have attended trial on March 5 because he went to the clinic that evening and was not quarantined until the following morning. The court declined to continue the trial so that Shoemaker could review Harris's exhibits. When Shoemaker later complained that he had no opportunity to cross examine Harris, the court responded that he had waived that right by failing to appear at trial on March 5. The court refused to continue the trial a second time so that Shoemaker could obtain a transcript of Harris's testimony.

Shoemaker appears to argue that the trial court's refusal to stay the proceedings violated his rights under the Servicemembers Civil Relief Act (SCRA), 50 App. U.S.C.A. §§ 501-597(b). The SCRA entitles a member of the United States armed services to a mandatory stay of court proceedings when the servicemember is precluded from participating in such proceedings due to active military duty. *In re Marriage of Herridge*, 169 Wn. App. 290, 292, 279 P.3d 956 (2012); 50 App. U.S.C.A. § 522; *see also* RCW 38.42.060 (providing similar relief under the Washington Service Members' Civil Relief Act). Where a servicemember has received notice of an action or proceeding, a stay may be obtained at "any stage before final judgment," either "upon application by the servicemember" or by the court "on its own motion." *Herridge*, 169 Wn. App. at 297-98 (quoting 50 App. USCA § 522(b)(1)). Here, Shoemaker's absence was due to illness rather than active duty. Moreover, he never filed the application necessary to trigger

relief under the SCRA.[3] *See Herridge*, 169 Wn. App. at 299 (application for stay must contain specific information, and servicemember must comply expressly with the statute to be entitled to stay).

Instead of applying the SCRA, we review the trial court's refusal to continue the trial for abuse of discretion. *See In re Welfare of R.H.*, 176 Wn. App. 419, 424, 309 P.3d 620 (2013) (we review denial of continuance for abuse of discretion). We see no abuse of discretion in the court's decision to allow the trial to proceed on March 5 in the wake of Shoemaker's unexcused absence. Nor do we see any abuse of discretion in the trial court's refusal to continue trial beyond the initial continuance to March 14. Shoemaker never sought to review Harris's exhibits before trial resumed on March 14, and he never sought to obtain a transcript of her testimony. *See In re Marriage of Olson*, 69 Wn. App. 621, 626, 850 P.2d 527 (1993) (pro se litigants are held to same standards and rules of procedure as attorneys).

Shoemaker also claims that he was denied the right to present evidence of Harris's wrongdoing during trial. The trial court sustained most of Harris's objections to this evidence on the basis that it was either hearsay or irrelevant, but the court did allow Shoemaker and his mother to testify about some instances of Harris's alleged misconduct. We see no abuse of discretion in the court's limitation of this evidence. *See Cole*, 163 Wn. App. at 213 (we review evidentiary rulings for abuse of discretion).

---

[3] Shoemaker also appears to challenge entry of the 2011 contempt order and the 2010 parenting plan as violations of his SCRA rights. Shoemaker filed a letter from his commanding officer on February 11, 2011, stating that Shoemaker's military service precluded his appearance at the contempt hearing scheduled that day. When Shoemaker did not call in to court as promised, the court issued the pending contempt order and warrant. The record does not show that Shoemaker sought relief under the SCRA in 2010. His attempts to seek relief under the SCRA from the 2010 and 2011 orders are untimely as well as lacking in merit.

Shoemaker also alleges that the trial court was biased against him. The court is biased against a person's case if it has a preconceived adverse opinion with reference to it, without just grounds or before sufficient knowledge. *In re Borchert*, 57 Wn.2d 719, 722, 359 P.2d 789 (1961). We presume that the trial court performed its functions without bias or prejudice. *Borchert*, 57 Wn.2d at 722; *In re Welfare of R.S.G.*, 174 Wn. App. 410, 430, 299 P.3d 26 (2013). The fact that the trial judge ruled adversely does not demonstrate prejudice. *See Rhinehart v. Seattle Times Co.*, 51 Wn. App. 561, 579-80, 754 P.2d 1243 (1998) (judge's prior adverse rulings did not demonstrate necessary prejudice for recusal of judge). We see no evidence of bias or prejudice on the record before us.

Finally, Shoemaker complains that he did not have a jury trial and that his mother was not allowed to help him present his case. Trial by jury is dispensed with in dissolution proceedings. RCW 26.09.010(1). And, while Shoemaker has the right to practice law on his own behalf, he may not transfer this right to be a self-represented litigant to another person who is not a lawyer. *State v. Hunt*, 75 Wn. App. 795, 807, 880 P.2d 96 (1994). We see no error in this regard and no violation of Shoemaker's right to a fair trial.

IV.     MOTION TO SUPPLEMENT RECORD

Shoemaker seeks to supplement the record with the following materials: handwritten statements from Harris regarding crimes she has committed; affidavits from witnesses at the hearing of August 19, 2011, concerning the trial court's prejudice and conflict of interest; affidavits from a witness who attended trial on March 5 and 6 concerning judicial bad faith, bias and denial of due process; documents erroneously shredded by the superior court clerks; and trial

court records inadvertently omitted from the original designation of clerk's papers due to "extreme confusion."[4] Appellant's Br. at 49.

We may direct that additional evidence on the merits of the case be taken before deciding a case on review if all of the following factors are satisfied:

> (1) additional proof of facts is needed to fairly resolve the issues on review, (2) the additional evidence would probably change the decision being reviewed, (3) it is equitable to excuse a party's failure to present the evidence to the trial court, (4) the remedy available to a party through postjudgment motions in the trial court is inadequate or unnecessarily expensive, (5) the appellate court remedy of granting a new trial is inadequate or unnecessarily expensive, and (6) it would be inequitable to decide the case solely on the evidence already taken in the trial court.

RAP 9.11(a); *Mission Ins. Co. v. Guarantee Ins. Co.*, 37 Wn. App. 695, 702, 683 P.2d 215 (1984). We reject Shoemaker's contention that the documents he seeks to admit satisfy these factors, and we deny his motion to supplement the record.

## V. FEES, COSTS, AND SANCTIONS

Harris argues that she is entitled to an award of fees, costs, and sanctions on appeal. She describes the behavior that justifies such an award as including Shoemaker's filing of a series of "incomprehensible and perjurious documents" that has greatly increased her attorney fees and resulted in this matter still being active almost 24 months from the filing of the notice of appeal. Resp't's Br. at 3.

Harris contends that she is entitled to fees on appeal on several grounds, including CR 11 and RAP 18.7. CR 11 sanctions are awarded by the superior court and not the appellate court. *Bldg Industry Ass'n of Wash. v. McCarthy*, 152 Wn. App. 720, 750, 218 P.3d 196 (2009). While CR 11 sanctions were formerly available on appeal under RAP 18.7, a 1994 amendment

---

[4] This court accepted two supplemental designations of clerk's papers from Shoemaker.

16

eliminated the reference to CR 11 in RAP 18.7 and provided for sanctions on appeal only under RAP 18.9. *Bldg Industry Ass'n*, 152 Wn. App. at 750.

RAP 18.9 allows an appellate court to impose sanctions against a party who uses the rules for the purposes of delay, files a frivolous appeal, or fails to comply with the rules. RAP 18.9(a); 3 K. TEGLAND, WASHINGTON PRACTICE: RULES PRACTICE, RAP 18.9, at 505 (7th ed. 2011). We have already denied Harris's motion for sanctions under RAP 18.9(a) and RAP 10.2 based on Shoemaker's delay in perfecting this appeal and filing his opening brief, and we decline to award sanctions on this basis now. We also decline to award sanctions based on a frivolous appeal, which is an appeal that presents no debatable issues on which reasonable minds might differ and which is so totally devoid of merit that there is no reasonable possibility of reversal. *Reid v. Dalton*, 124 Wn. App. 113, 128, 100 P.3d 349 (2004). For the same reason, we decline to award fees under RCW 4.84.185, which provides for an award of fees and costs to the prevailing party when the action is frivolous. *Protect the Peninsula's Future v. City of Port Angeles*, 175 Wn. App. 201, 218, 304 P.3d 914, *review denied*, 178 Wn.2d 1022 (2013). Finally, we decline to award sanctions under RAP 18.9 based on Shoemaker's failure to comply with the appellate rules.

We also decline to sanction Shoemaker for contempt under RCW 7.21.020, and we deny Harris's request for fees based on financial need under RCW 26.09.140 because she has not filed the necessary affidavit. *See* RAP 18.1(c) (fees under RCW 26.09.140 are awarded only when the requesting party files an affidavit of financial need no later than 10 days before a case is considered).

Nonetheless, we may award Harris fees based on Shoemaker's intransigence. Intransigence includes obstruction and foot dragging, filing repeated unnecessary motions, or making a proceeding unduly difficult and costly. *In re Marriage of Bobbitt*, 135 Wn. App. 8, 30, 144 P.3d 306 (2006). If one spouse's intransigence caused the spouse seeking a fee award to require additional legal fees, the financial resources of the spouse seeking fees are irrelevant. *In re Marriage of Morrow*, 53 Wn. App. 579, 590, 770 P.2d 197 (1989). The trial court awarded Harris fees based on Shoemaker's intransigence and bad faith and explained its award as follows:

> [Shoemaker] filed against [Harris] numerous idle claims in state and federal courts outside of Kitsap County; these claims all were dismissed as devoid of merit, but cost [Harris] an exorbitant amount of attorney fees far above and beyond what otherwise would have been accrued to resolve this dissolution action. Additionally, [Shoemaker] filed manifold irrelevant, nonsensical documents, motions, and discovery requests necessitating attention from and responses by [Harris's] attorney. This court finds that [Shoemaker's] behaviors reflected in the record doubtlessly constitute intransigence and an award of attorney fees to [Harris] as requested is appropriate.

CP at 709-10.

Shoemaker's intransigent behavior has continued in this court, as his actions in perfecting this appeal have caused Harris to incur substantial fees and costs. Before the briefing was completed, Shoemaker filed several nonmeritorious motions, including a motion for discretionary review in the Supreme Court, that required attention from Harris's attorney. This behavior is a basis for awarding fees on appeal separate from RAP 18.9 and RCW 26.09.140. *In re Marriage of Mattson*, 95 Wn. App. 592, 605, 976 P.2d 157 (1999). We award Harris fees on appeal based on Shoemaker's intransigence. Based on this ruling, we need not award statutory attorney fees under RCW 4.84.080.

43633-7-II

Shoemaker requests an award of fees, costs, and sanctions for the first time in his reply brief. This request comes too late. *See Hawkins v. Diel*, 166 Wn. App. 1, 13 n.2, 269 P.3d 1049 (2011) (fee request must be raised in opening brief under RAP 18.1).

Affirmed.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

Melnick, J.

We concur:

Worswick, J.

Johanson, C.J.