IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION ONE

| | | |
|---|---|---|
| In the Matter of the Marriage of<br>DOUGLAS NIEMI, | )<br>)<br>) | No. 82549-6-I |
| Appellant, | ) | |
| | ) | |
| and | ) | PUBLISHED OPINION |
| | ) | |
| MARIAH NIEMI, | )<br>) | |
| Respondent. | )<br>) | |

BOWMAN, J. — Douglas Niemi appeals the trial court's order granting Mariah Niemi[1] visits with their two dogs, awarded to Douglas as his separate property in a dissolution proceeding. Because the trial court exceeded its authority in awarding visitation rights, we reverse and remand for the trial court to strike the provision.

## FACTS

In 2018, Mariah and Douglas separated after 27 years of marriage. At the time, the couple owned two large dogs about two years old, named Kona and Mr. Bear. Douglas and Mariah called the dogs "[t]he babies" and texted each other regularly about the dogs' sleep schedules, grooming, behavior training, exercise, and social outings.

---

[1] Mariah has since changed her last name. For clarity, we refer to each party by first name, and intend no disrespect by doing so.

Citations and pin cites are based on the Westlaw online version of the cited material.

As their relationship deteriorated, Mariah moved from the family home into a motor home she kept at an RV[2] park. Though Kona and Mr. Bear continued to live with Douglas, Mariah visited the dogs several days a week and sometimes took them to her RV park. The record reflects some acrimony between the two in arranging the visits.

On August 30, 2018, Douglas petitioned for legal separation. Mariah answered the petition and asked the court to dissolve their marriage. Mariah also told the court:

> The parties have two dogs which are family members and [Mariah] is requesting that she receive at least 10 hours per week with the dogs; right of first refusal for the care and the parties will split the costs associated with raising the pets. This should be includ[ed] in the final separation agreement.

A court commissioner issued temporary orders but did not address the status of the dogs other than to order that Mariah pay one-half of their veterinary and grooming bills.[3] Mariah continued to visit the dogs several days a week.

Trial began in October 2019. Most of the testimony and evidence centered on the parties' financial positions, spousal support, and their disputes over the distribution of monetary assets.

Throughout the proceedings, Mariah emphasized her desire to have "continued access" to Kona and Mr. Bear, characterizing them as her "emotional support animals." She wanted "to ensure" that visitation with the dogs "is part of the final orders" and told the court, "[M]y primary concern in this case is what will

---

[2] Recreational vehicle.

[3] In her response to Douglas' request for temporary orders, Mariah asked that she "have visitation with the parties' pets as originally agreed [to] by the parties."

2

happen with [the dogs]. My biggest fear is that I will be separated from them."

Mariah also explained she was "worried that [Douglas] would not honor an

informal agreement" about the dogs and did not "trust that he'll let [her] see them

without a court order." Mariah asked the court to award each spouse legal

ownership of one animal but to allow her to care for Douglas' dog if he became

unable to do so.

Douglas asked the court not to separate Kona and Mr. Bear because they

were a "bonded pair." He also argued that Mariah's motor home was too small to

accommodate them. He asked the court to award him ownership of both dogs

and suggested he would provide Mariah with access to them informally without a

court ordered schedule.

In its final dissolution decree, the court awarded both Kona and Mr. Bear

to Douglas as his separate property. But the trial court also ordered that Mariah

could visit the dogs on a set schedule:

> [Mariah] is awarded the right to visits with both dogs (Mr. Bear and
> Kona), including removing [the] dogs from [Douglas'] property
> during the visits. The visits shall involve both dogs at the same
> time. The exchanges shall occur in the yard of [Douglas] unless
> otherwise agreed to by the parties. Except in cases of an
> emergency, [Mariah] shall give [Douglas] a minimum of 48 hours[']
> notice if she cannot attend a scheduled visit.
>
> The visits shall be three times a week for three hours as follows:
> Wednesdays, Fridays, and Sundays from 5:45 p.m. until 8:45 p.m.
> If any visits fall on July 4th, Christmas Eve, Christmas Day, New
> Year's Eve, or New Year's Day, [Douglas] shall have the option to
> set that visit on the Monday following the holiday, but he must
> provide [Mariah] with a minimum of 30 days['] advanced written
> notice of the schedule change.
>
> The veterinary bills and grooming costs of the dogs shall be paid as
> follows: 75% by [Douglas] and 25% by [Mariah].

Douglas moved to reconsider the order granting Mariah access to the dogs. He argued that the court had distributed the dogs "in such a manner that the parties have been left joint owners of the property," that the visitation schedule was "oppressive," and that he and Mariah "should not be put in position by the court of encountering one another" multiples times every week for as long as the dogs live. Douglas again said he would let Mariah visit the dogs, "but not according to any set-in-stone schedule, and only when such visits might be convenient to my own present and entirely unpredictable future employment, educational, and purely personal schedule."

The court denied the motion to reconsider. It determined that the dogs are "distinct from a standard award of personal property." And the court explained that its order "did not require continued joint ownership." Instead, it "acknowledged the appropriateness of both parties maintaining consistent contact with [the] dogs."

Douglas appeals.[4]

ANALYSIS

Douglas contends the trial court abused its discretion by granting Mariah visitation of Mr. Bear and Kona because they are his separate property. Mariah argues the court had discretion under RCW 26.09.080 to grant her access to the dogs as part of its property distribution authority. In the alternative, she claims common law compels a special classification of pets, something more than

---

[4] Mariah filed for cross review but later withdrew her appeal.

4

personal property, for which the trial court can order visitation. We agree with Douglas.

A trial court has broad discretion in distributing marital property. In re Marriage of Kraft, 119 Wn.2d 438, 450, 832 P.2d 871 (1992). We review a trial court's order distributing property for manifest abuse of that discretion. In re Marriage of Konzen, 103 Wn.2d 470, 478, 693 P.2d 97 (1985). A ruling based on an erroneous view of the law necessarily amounts to an abuse of discretion. In re Marriage of Herridge, 169 Wn. App. 290, 296-97, 279 P.3d 956 (2012).

Statute guides the trial court's distribution of property in a dissolution action. In re Marriage of Rockwell, 141 Wn. App. 235, 242, 170 P.3d 572 (2007). Under RCW 26.09.080, a trial court must dispose of property in a "just and equitable" manner after considering (1) the nature and extent of the community property, (2) the nature and extent of the separate property, (3) the duration of the marriage, and (4) the economic circumstances of each spouse.

Citing RCW 26.09.080, Mariah argues the trial court "rightly considered the 'nature and extent' of Kona and Mr. Bear" in ordering visits with the dogs. According to Mariah, the order granting access to Mr. Bear and Kona is a "just and equitable" disposition of the dogs under RCW 26.09.080, considering the "unique status" of animals and "the effect they have on humans."

Mariah's attempt to invoke the trial court's equitable duties under RCW 26.09.080 as authority to order visitation of property after its distribution is misplaced. RCW 26.09.080 requires the trial court "be aware of the separate and community nature of the marital property," as well as the extent thereof, and divide the property in a manner that appears just and equitable. In re Marriage of

5

Hadley, 88 Wn.2d 649, 660, 565 P.2d 790 (1977). Here, the record shows that the trial court considered the statutory factors in RCW 26.09.080, recognized the nature of Mr. Bear and Kona as community property, and determined it was just and equitable to distribute them as separate property to Douglas.[5] But the court went further and ordered that Douglas make his separate property available to Mariah for her use and enjoyment. Nothing in RCW 26.09.080 empowers a trial court to compel a party to produce their separate property for the use and enjoyment of another after dissolution.[6]

In the alternative, Mariah urges us to "take a firm grasp of the reins of common law as it pertains to animals" and "fill the interstices that legislative enactments fail to address." Citing In re Parentage of L.B., 155 Wn.2d 679, 122 P.3d 161 (2005), she argues that common law creates a special classification for pets beyond that of mere personal property and that we should recognize visitation rights for pets where the legislature has failed to do so.

In L.B., our Supreme Court recognized the existence of "de facto parents" not otherwise covered under chapter 26.10 RCW and accorded them the same rights and responsibilities as those given to "parents" as used in child custody statutes. L.B., 155 Wn.2d at 706-07. Importantly, the court determined that Washington's common law already recognized de facto parents and protected

---

[5] Douglas argues that the court's property distribution order amounts to shared ownership akin to joint tenancy. He is incorrect. Joint tenancy exists where two or more persons jointly own property. In re Estate of Oney, 31 Wn. App. 325, 328, 641 P.2d 725 (1982). Here, the court awarded the dogs solely to Douglas as his separate property.

[6] Mariah argues the order is much like a license, court ordered bailment, or episodic lease of the dogs. Still, she offers no authority for the trial court to encumber Douglas' separate property under any of those theories.

6

their interests in a manner similar to biological parents.[7]  L.B., 155 Wn.2d at 692-93.  The court also concluded that visitation rights for de facto parents reflected the existing statutory directive to give paramount consideration to " 'the welfare of the child.' "  L.B., 155 Wn.2d at 698 (quoting In re Ex Parte Day, 189 Wash. 368, 382, 65 P.2d 1049 (1937)).

Unlike the recognition of a special category of parentage under the child custody statutes in L.B., Washington common law has not recognized animals as a special category of property.  To the contrary, our courts historically and consistently have characterized animals, even family pets, as personal property.  See Sherman v. Kissinger, 146 Wn. App. 855, 861, 195 P.3d 539 (2008).  And unlike the child custody statutes as they related to de facto parents in L.B., our legislature has adequately provided for the distribution of personal property in RCW 26.09.080.  That statute contains no provision for pet visitation.  "[I]t is not the province of this court to step in and fashion a remedy where the legislature has clearly abstained from doing so."  In re Custody of M.W., 185 Wn.2d 803, 822, 374 P.3d 1169 (2016).[8]

Finally, judicially imposed visitation rights for pets would run contrary to the current statutory directive that marital property distributions should be final.[9]

---

[7] These interests include the fundamental liberty interest of parents in the custody of their children.  In re Custody of B.M.H., 179 Wn.2d 224, 235, 315 P.3d 470 (2013).

[8] Amicus the Animal Legal Defense Fund points out that some states have enacted legislation allowing for postdissolution joint ownership of pets.  See ALASKA STAT. § 25.24.160(a)(5) (2017); CAL. FAM. CODE § 2605(b) (Deering 2019); 750 ILL. COMP. STAT. 5/503(n) (2019).  To date, the Washington State Legislature has chosen not to enact similar provisions.

[9] RCW 4.04.010 provides that "[t]he common law, so far as it is not inconsistent with the . . . laws . . . of the state of Washington . . . , shall be the rule of decision in all the courts of this state." (Emphasis added.)

See RCW 26.09.170(1) ("The provisions as to property disposition may not be revoked or modified, unless the court finds the existence of conditions that justify the reopening of a judgment under the laws of this state."). Parties to a dissolution have a right to have their property interests "definitely and finally determined" without the prospect of future litigation. Shaffer v. Shaffer, 43 Wn.2d 629, 631, 262 P.2d 763 (1953).

Trial court determinations about visitation of animals would inevitably lead to continuing enforcement and supervision problems. Indeed, the parties evidence such conflict here. Mariah admitted she was concerned that disputes over visitation "could cause further litigation or issues." And Douglas lamented to the trial court:

> This structure creates trouble for the two people involved and very possibly will create trouble for the court system in having to deal with the inevitable arguments and disputes which will arise due to this highly unusual mandate ordered in this case.

The trial court erred in granting Mariah visits with Mr. Bear and Kona.[10]

Attorney Fees

Both parties request attorney fees on appeal. We may order one party to pay the other's attorney fees and costs associated with the appeal of a dissolution action under RCW 26.09.140.[11] In exercising our discretion, we

---

[10] Because we reverse the pet visitation order, we do not reach Douglas' argument that the visitation schedule was unreasonable.

[11] RCW 26.09.140 provides, in pertinent part:

The court from time to time after considering the financial resources of both parties may order a party to pay a reasonable amount for the cost to the other party of maintaining or defending any proceeding under this chapter and for reasonable attorneys' fees or other professional fees in connection therewith, including sums for legal services rendered and costs incurred prior to the commencement of the proceeding or enforcement or modification proceedings after entry of judgment.

consider the arguable merit of the issues on appeal and the parties' financial resources. In re Marriage of King, 66 Wn. App. 134, 139, 831 P.2d 1094 (1992). In considering the financial resources of both parties, we balance the needs of the requesting party against the other party's ability to pay. In re Marriage of Trichak, 72 Wn. App. 21, 26, 863 P.2d 585 (1993). Having reviewed each parties' financial declaration, we conclude that "[e]ach party is financially able to pay his or her attorney and neither would be under a critical hardship to do so," and deny the requests for fees. In re Marriage of Wilson, 117 Wn. App. 40, 51, 68 P.3d 1121 (2003).

Because the trial court exceeded its authority in granting Mariah visitation of the dogs it awarded to Douglas as his separate property, we reverse and remand for the trial court to strike the provisions of the dissolution decree related to visitation and shared maintenance costs for Kona and Mr. Bear.

Brunner, J.

WE CONCUR:

Andrus, A.C.J.                    Appelwick, J.