# IN THE COURT OF APPEALS FOR THE STATE OF WASHINGTON

TANYA L. BEVAN,

    Respondent,

  v.

CLINT and ANGELA MEYERS,
husband and wife,

    Appellants.

No. 69505-3-I

DIVISION ONE

PUBLISHED OPINION

FILED: August 25, 2014

SPEARMAN, C.J. — This case arises from a dispute between neighbors over a shared property boundary. The respondent, Tanya Bevan, sued Clint and Angela Meyers seeking, among other things, to quiet title in the disputed property. The Meyers counterclaimed for damages, to quiet title, and for trespass. Bevan brought a special motion to strike the Meyers' counterclaim for damages under Washington's Strategic Lawsuits Against Public Participation (anti-SLAPP) statute, RCW 4.24.525. Bevan alleged that the counterclaim violated the anti-SLAPP statute because it was based on an allegation that she had reported information to the Department of Public Health-Seattle & King County (KCHD). The Meyers opposed the motion and attempted a second amendment to their counterclaim, this time omitting any explicit reference to Bevan's report. The trial court granted Bevan's motion and struck the counterclaim for damages. The trial court also awarded Bevan attorney fees and costs of nearly $19,000 and imposed a statutory penalty of $10,000. We affirm.

FACTS

The Meyers and Bevan own adjacent parcels in rural King County, near Duvall, Washington. The Meyers contend that the shared boundary between the properties was commonly understood to be marked by the end of the tree growth on the western edge of the Meyers' property, where Bevan had clear-cut her parcel, leaving a line of stumps on the eastern edge of her property. Bevan disputes this contention, arguing that the boundary is actually as determined by a survey commissioned by her during the summer and fall of 2011.

The Meyers planned to build a new home on their parcel. In anticipation of the new residence, the Meyers installed a well and septic system which were pending approval by KCHD. The Meyers never obtained a survey to determine whether their home, well, and septic system were properly located on their property. In October 2009, the Meyers obtained a building permit from King County and began construction.

During the 2011 survey of Bevan's properties, the surveyor determined that the Meyers' well was located approximately 18 feet on Bevan's side of the property line. Additionally, the location of the well failed to account for the required 100-foot wellhead radius from adjoining property lines. As a result of the survey, Bevan also believed that the Meyers had destroyed trees, stockpiled building materials, and removed survey stakes on her side of the property line without her permission.

On September 1, 2011, Bevan's surveyor e-mailed Ken Elliott, registered sanitarian at KCHD, and notified him that, based on the survey, the Meyers' well

2

had been installed on Bevan's property. On November 4, 2011, shortly after receiving a copy of the recorded survey, KCHD notified the Meyers that it would not grant final approval for their well. The notice explained that the disapproval was because, according to Bevan's survey, the location of the "off-site well has not been authorized by either Public Health, or the neighbor [Bevan]." Clerk's Papers (CP) at 106. KCHD also denied the permit for the Meyers' septic system because the input was not from an approved water source. Although advised of their right to appeal the permit denials, the Meyers did not do so.

On March 27, 2012, Bevan filed this lawsuit against the Meyers, alleging that they had felled trees, dug a well, and otherwise trespassed upon land that she owned. Bevan sought to quiet title in the disputed property and an award of damages. The Meyers answered on July 6, 2012, denying Bevan's claims and asserting various defenses. They also asserted three counterclaims: for damages arising from Bevan's interference with their use and enjoyment of their property; to quiet title in the disputed property; and for trespass and associated damages. Later that same day, the Meyers filed their first amended answer and counterclaim.

Bevan filed a special motion to strike the Meyers' counterclaim for damages under RCW 4.24.525, the anti-SLAPP statute.[1] In her motion, Bevan asserted that the report to KCHD was an action involving public participation and

---

[1] Bevan's motion to strike focused on the Meyers' claim for damages resulting from Bevan's alleged interference with their use and enjoyment of their property. The damages the Meyers alleged to have resulted from the claim of trespass were not in dispute as it relates to the motion to strike.

3

petition and, because the Meyers' counterclaim was based on this protected act, it violated the anti-SLAPP statute.[2]

In response, the Meyers asserted that the anti-SLAPP statute does not apply to this private land dispute. They also argued that Bevan failed to establish that the Meyers' counterclaim was based on an action involving public participation and petition because the gravamen of their counterclaim for damages was based on Bevan's interference with the quiet use and enjoyment of their property, not the report to KCHD. Consistent with this argument, the Meyers filed a second amended answer and counterclaim that removed any reference to the report to KCHD. Bevan moved to strike the pleading because the Meyers filed it without obtaining the permission of the trial court as required by CR 15(a). The trial court reserved ruling on the motion to strike, but modified its order striking the counterclaim in the event the pleading was later accepted. Instead of striking specific paragraphs from the first amended counterclaim, the court struck the counterclaim for damages "insofar as they [sic] pertain to communications with [KCHD]."[3] Verbatim Report of Proceedings at 31-32; CP at 144. Lastly, the

---

[2] In her declaration in support of the motion to strike, Bevan denied that she made the report to KCHD or directed anyone else to do so.

[3] In a Statement of Additional Authority, the Meyers cite Henne v. City of Yakima, 177 Wn. App. 583, 313 P.3d 1188 (2013), review granted, 179 Wn.2d 1022 (2014), in support of their argument that the trial court erred in granting Bevan's motion because their second amended counterclaim for damages removed any express reference to Bevan's report to the KCHD. The case is inapposite because, in Henne, the amended complaint was properly before the court. Here, the Meyers' second amended counterclaim had not been accepted by the court and thus was not properly before it. In addition, in Henne, the amended complaint eliminated the protected activity as a basis for the claims. Here the Meyers' second amended counterclaim re-characterizes their claim but does not alter the basis for it—namely, Bevan's report to KCHD.

Meyers argued they were entitled to a continuance in order to conduct discovery on the issue of property ownership.

On September 28, 2012, the trial court granted Bevan's motion and struck the Meyers' counterclaim for damages. It also ordered the Meyers to pay Bevan's attorney fees and costs in bringing the motion, and imposed a $10,000 statutory penalty. Almost two months later, Bevan filed a "Motion for Establishment of Costs and Attorney's Fees on Plaintiff's Special Motion to Strike," seeking $18,967.50 in fees and $109.69 in costs. CP at 155-62. The Meyers objected that this request for attorney fees and costs was untimely under CR 54(d)(2). The trial court disagreed and granted Bevan fees and costs as requested.

The Meyers appeal.

## DISCUSSION

### *The anti-SLAPP statute*

The Washington anti-SLAPP statute is meant to deter meritless suits filed primarily to chill a defendant's exercise of First Amendment rights, including the right to petition the government for the redress of grievances. RCW 4.24.525 (LAWS OF 2010, ch. 118, § 1). The statute authorizes expedited judicial review in these cases via special motions to strike. RCW 4.24.525(4), (5). We review the grant or denial of an anti-SLAPP special motion de novo. Dillon v. Seattle Deposition Reporters, LLC, 179 Wn. App. 41, 70 n.22, 316 P.3d 1119 (2014) (citing Green v. Normandy Park, 137 Wn. App. 665, 681, 151 P.3d 1038 (2007)).

Special motions to strike under the anti-SLAPP statute are subject to a burden-shifting scheme. To prevail on her special motion, Bevan was required, at

No. 69505-3-I / 6

the outset, to show by a preponderance of the evidence that the Meyers'

counterclaim was based on activity involving public participation and petition.[4]

RCW 4.24.525(2) defines public participation and petition as

> (a) Any oral statement made, or written statement or other
> document submitted, in a legislative, executive, or judicial
> proceeding or other governmental proceeding authorized by law;
>
> (b) Any oral statement made, or written statement or other
> document submitted, in connection with an issue under
> consideration or review by a legislative, executive, or judicial
> proceeding or other governmental proceeding authorized by law;
>
> (c) Any oral statement made, or written statement or other
> document submitted, that is reasonably likely to encourage or to
> enlist public participation in an effort to effect consideration or
> review of an issue in a legislative, executive, or judicial proceeding
> or other governmental proceeding authorized by law;
>
> (d) Any oral statement made, or written statement or other
> document submitted, in a place open to the public or a public forum
> in connection with an issue of public concern; or
>
> (e) Any other lawful conduct in furtherance of the exercise of the
> constitutional right of free speech in connection with an issue of
> public concern, or in furtherance of the exercise of the constitutional
> right of petition.

Bevan argues that the Meyers' counterclaim for damages falls within this

definition because it is based on the allegation that Bevan reported the Meyers to

KCHD. Br. of Resp't at 28. The Meyers contend the anti-SLAPP statute is

inapplicable because their counterclaim for damages is not based on Bevan's

---

[4] RCW 4.24.525(4)(b) provides:

A moving party bringing a special motion to strike a claim under this subsection
has the initial burden of showing by a preponderance of the evidence that the
claim is based on an action involving public participation and petition. If the
moving party meets this burden, the burden shifts to the responding party to
establish by clear and convincing evidence a probability of prevailing on the
claim. If the responding party meets this burden, the court shall deny the motion.

6

report. They claim the alleged damages were the result of Bevan's interference with their property rights when she asserted ownership of the disputed property.

In determining whether a claim or counterclaim[5] arises from public participation and petition, we look to the gravamen of the claim. City of Seattle v. Egan, 179 Wn. App. 333, 338, 317 P.3d 568 (2014). For the anti-SLAPP statute to apply the claim must be "'based on' speech or conduct 'in furtherance of the exercise of the constitutional right of [petition or] free speech in connection with an issue of public concern.'" Aronson v. Dog Eat Dog Films, Inc., 738 F. Supp. 2d 1104, 1110 (W.D. Wash. 2010) (quoting RCW 4.24.525(2)(e)). "In other words, the act underlying the plaintiff's cause, or the act which forms the basis for the plaintiff's cause of action, must itself have been an act in furtherance of the right of free speech [or petition]." Id. at 1110-11 (citing Equilon Enters. v. Consumer Cause, Inc., 29 Cal. 4th 53, 66, 52 P.3d 685 (2002)). A trial court's decision on this showing must be based on the "pleadings and supporting and opposing affidavits stating the facts upon which the liability or defense is based." RCW 4.24.525(4)(c).

In Egan, we looked to the source of the rights asserted in order to determine the gravamen of the claim subject to a special motion to strike. In that case, Egan requested records from the city of Seattle (City) under the Public

---

[5] The Meyers mistakenly rely on Saldivar v. Momah, 145 Wn. App. 365, 387, 186 P.3d 1117 (2008), to argue that counterclaims are not subject to the anti-SLAPP statute. The Meyers correctly state our holding in Saldivar, but fail to note that the anti-SLAPP statute has since been amended in 2010. Unlike the version of the statute at issue in Saldivar, the current version expressly includes counterclaims in the class of claims subject to regulation. See RCW 4.24.525(1)(a) (defining "claim" to include a "counterclaim."). Because the 2010 amendment controls this case, we reject the Meyers' argument on this issue.

Records Act (PRA), chapter 42.56 RCW. The City released some of the requested records but refused to release others, claiming they were exempt under the statute. Egan disagreed and threatened to sue. The City filed a declaratory judgment action against Egan and a motion for a preliminary injunction pursuant to RCW 42.56.540, which authorizes a court to enjoin production of a public record falling under an exemption. Egan sought dismissal of the City's actions under the anti-SLAPP statute, arguing that they were based on a protected activity—namely, his threat to file suit to establish his rights under the PRA. The trial court refused to dismiss the City's motion and Egan appealed.

We affirmed the trial court, holding that "although the 'threat' of a suit may have pushed the City to act it was not the 'gravamen' of the underlying action," which was based, instead, on the City's own rights under the PRA, which authorized it to seek declaratory and injunctive relief under the circumstances. Egan, 179 Wn. App. at 341-42. Thus, in Egan, because the City sought to vindicate rights wholly separate from Egan's right to seek redress in response to an alleged PRA violation, the anti-SLAPP statute was inapplicable.

By contrast, in this case, the Meyers' counterclaim for damages is directly based on an action in furtherance of the right to petition—the report to KCHD. Although the Meyers assert that their damages arise generally from Bevan's false claim of ownership, it is clear from the pleadings that these alleged damages flow from the actions of KCHD. The Meyers' claimed damages include the "loss of use of their well, home and property; increased living costs arising out of their need to live elsewhere; diminution in the value of their property; costs

and expenses relating to the installation of the well and related facilities; costs required to be incurred in the investigation and response to plaintiff's claims; [and] fees and costs relating to [c]ounty permits and approvals." CP at 17. The Meyers do not explain, nor can we discern, how these damages could have been caused solely by Bevan's claims of ownership. Rather, the claimed damages occurred because of actions taken by KCHD, which were in direct response to Bevan's complaint. Thus, a protected action forms the gravamen of the Meyers' claim.

We conclude that Bevan carried her burden to establish that the Meyers' suit arises from protected activity under the anti-SLAPP statute. Once she made this showing, the burden shifted to the Meyers to establish by clear and convincing evidence a probability of prevailing on their counterclaim for damages. See RCW 4.24.525(4)(b). RCW 4.24.525(4)(c) provides that a trial court's decision on this showing must be based on the "pleadings and supporting and opposing affidavits stating the facts upon which the liability or defense is based." But the subsection grants trial courts discretion to order specified discovery or other hearings or motions to serve this inquiry, notwithstanding the automatic stay imposed by the statute.

In this case, the Meyers requested limited discovery on the issue of property ownership in response to Bevan's special motion. The trial court denied this request. It reasoned that, even with discovery, the Meyers could not possibly show a probability of prevailing on their damages counterclaim because under

9

the anti-SLAPP statute, Bevan was absolutely immune for the act of reporting to KCHD. The Meyers assign error to this ruling.

We review the trial court's discovery rulings for abuse of discretion. Doe v. Puget Sound Blood Ctr., 117 Wn.2d 772, 777, 819 P.2d 370 (1991). A court abuses its discretion if its decision is manifestly unreasonable or based on untenable grounds or reasons. Mayer v. STO Indus., Inc., 156 Wn.2d 677, 684, 132 P.3d 115 (2006). If a ruling is based on an erroneous view of the law, it is necessarily an abuse of discretion. In re Marriage of Herridge, 169 Wn. App. 290, 296-97, 279 P.3d 956 (2012).

The Meyers do not dispute the trial court's conclusion that the act of reporting to a government agency on matters of concern to the agency is an exercise of the right to petition for which a party is absolutely immune from liability. See Marriage of Meredith, 148 Wn. App. 887, 899-902, 201 P.3d 1056 (2009). Instead, they argue that depositions of Bevan and other witnesses were necessary in order to substantiate their theories of ownership, which were based on claims that Bevan had affirmed the parties' common boundary in communications with the Meyers and their predecessor in interest. But, as previously discussed, the Meyers' asserted damages flow only from KCHD's response to the complaint it received, not from Bevan's assertions of ownership.

Because there is no plausible link between Bevan's assertion of ownership over the disputed property and the Meyers' claimed damages, the trial court had no reason to allow discovery on the issue of ownership. Refusal to allow discovery on this issue was not an abuse of discretion. Moreover, because

10

the Meyers failed to establish by clear and convincing evidence a probability of prevailing on their counterclaim for damages, they failed to meet their burden to defeat Bevan's special motion to strike. The trial court did not err in granting the special motion.

### Attorney Fees and Costs

After granting Bevan's special motion, the trial court granted her attorney fees and costs, and imposed a statutory penalty against the Meyers of $10,000. The Meyers claim that this award was error because they were the properly prevailing party under the anti-SLAPP statute. They also claim that the award of fees and costs should be reversed because Bevan's motion for fees was untimely under CR 54(d)(2). They are incorrect.

We review a trial court's award of attorney fees and costs for abuse of discretion. In re Recall of Pearsall-Stipek, 136 Wn.2d 255, 265, 961 P.2d 343 (1998). This issue also involves interpretation of CR 54 and the anti-SLAPP statute, which we consider de novo. Dillon, 179 Wn. App. at 70; Wiley v. Rehak, 143 Wn.2d 339, 343, 20 P.3d 404 (2001).

RCW 4.24.525(6) requires a trial court to award attorney fees and costs, along with a $10,000 sanction, to a moving party who prevails on a special motion under the anti-SLAPP statute. It provides:

> (a) The court *shall* award to a moving party who prevails, in part or in whole, on a special motion to strike made under subsection (4) of this section, without regard to any limits under state law:
>      (i) Costs of litigation and any reasonable attorneys' fees incurred in connection with each motion on which the moving party prevailed;

(ii) An amount of ten thousand dollars, not including the costs of litigation and attorney fees; and

(iii) Such additional relief, including sanctions upon the responding party and its attorneys or law firms, as the court determines to be necessary to deter repetition of the conduct and comparable conduct by others similarly situated.

RCW 4.24.525(6) (emphasis added).

Claims for attorney fees, other than costs and disbursements, must be made by a motion filed within 10 days of the entry of a judgment unless the substantive law in the cause of action included a damages element proved at trial. CR 54(d)(2).

In this case, Bevan expressly moved the court for costs, attorney fees, and statutory penalties when she filed her special motion to strike on August 30, 2012. This claim was entered during the pretrial phases of the case, well before entry of judgment in the matter. Thus, when Bevan prevailed on her special motion to strike, she was entitled to reasonable attorney fees, costs, and a $10,000 sanction under RCW 4.24.525(6). Bevan's subsequent "Motion for Establishment of Costs and Attorney's Fees on Plaintiff's Special Motion to Strike, RCW 4.24.525(4)" was not, as the Meyers now assert, a distinct "claim" for attorney fees. CP at 155-62. Rather, it was merely a request that the trial court calculate the amount of fees already authorized pursuant to its September 28, 2012 order. Thus, the trial court's order awarding Bevan attorney fees, costs, and a $10,000 statutory penalty was not error.

Citing RAP 18.1 and Landberg v. Carlson, 108 Wn. App. 749, 758, 33 P.3d 406 (2001), Bevan requests an award of attorney fees and costs on appeal.

In <u>Landberg</u>, we held when attorney "fees are allowable at trial, the prevailing party may recover fees on appeal as well." 108 Wn. App. at 758. Because she was the prevailing party below and on appeal, we grant Bevan's request, subject to compliance with RAP 18.1.

Affirmed.

WE CONCUR:

Spearman C.J.

Becker, J.