EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Maribel Rivera Ortiz<br><br>Peticionaria<br><br>v.<br><br>Melvin Rolón Merced<br><br>Recurrido | Certiorari<br><br>2025 TSPR 25<br><br>215 DPR ___ |

Número del Caso: CC-2023-0076


Fecha: 17 de marzo de 2025


Tribunal de Apelaciones:

    Panel IV


Representante legal de la parte peticionaria:

    Lcda. Hilda Esther Colón Rivera


Representantes legales de la parte recurrida:

    Lcda. Jerusa Cruz Alfaro
    Lcda. Ligia E. Santos Torres


Materia: Derecho de Familia – Paralización de un procedimiento de reclamación de pensión alimentaria contra un miembro activo en el servicio militar al amparo del estatuto federal del *Servicemembers Civil Relief Act.*


Este documento está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal Supremo. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Maribel Rivera Ortiz

    Peticionaria

       v.                CC-2023-0076     Certiorari

Melvin Rolón Merced

    Recurrido


Opinión del Tribunal emitida por el Juez Asociado señor Kolthoff Caraballo


En San Juan, Puerto Rico, a 17 de marzo de 2025.

En este caso, nos corresponde dilucidar si el Tribunal de Apelaciones erró al denegar expedir un recurso de *certiorari* para modificar una determinación del Tribunal de Primera Instancia que paralizó los procedimientos sobre una petición de alimentos.

Adelantamos que el Tribunal de Primera Instancia actuó correctamente al ordenar la paralización. Ello, debido a que se trataba de un procedimiento de reclamación de pensión alimentaria en contra de un miembro activo en el servicio militar al amparo del estatuto federal del *Servicemembers Civil Relief Act* (SCRA), 50 USCA sec. 3901 *et seq.* Por tanto,

confirmamos la determinación del foro apelativo intermedio.

I

En sustancia y en síntesis, este caso, como tantos otros, se relaciona con una pensión alimentaria, cuyos detalles no es necesario pormenorizar. Estos son los hechos pertinentes.

La Sra. Maribel Rivera Ortiz (peticionaria) y el Sr. Melvin Rolón Merced (recurrido) se casaron el 23 de septiembre de 2003 -en Puerto Rico-. Durante su matrimonio, procrearon una hija (MRR) nacida el 16 de abril de 2004 -en el estado de Florida-.[1] Las partes se divorciaron en diciembre de 2008 en el estado de Virginia, lugar en el que convivieron previo a su separación en 2007.[2] Tras la separación en 2007, la peticionaria se mudó con MRR a Puerto Rico en donde han continuado residiendo hasta el presente.[3]

El 20 de abril de 2022, la peticionaria presentó en el Tribunal de Primera Instancia una *Petición de alimentos* a favor de su hija y en contra del recurrido.[4]

Posteriormente, el 27 de mayo de 2022, el recurrido solicitó la aplicación de la protección que le otorga el *Servicemembers Civil Relief Act*, *supra*, a un militar activo de suspender o paralizar los procedimientos o pleitos

---

[1] Véase *Certificado de nacimiento*, Apéndice de Recurso de *certiorari*, pág. 90.

[2] Véase *Stipulation and Agreement*, Apéndice de Recurso de *certiorari*, pág. 76.

[3] Íd.

[4] *Petición*, Apéndice de Recurso de *certiorari*, pág. 68.

judiciales o administrativos en su contra mientras se encuentra activo en el servicio militar de Estados Unidos.[5] Sostuvo que es un militar activo domiciliado en el estado de Virginia y movilizado al estado de California. Conforme a ello, según surge del expediente, el recurrido se encontraba activo en el servicio militar a bordo de un barco de la Marina de los Estados Unidos.[6]

Por su parte, el 7 de junio de 2022, la peticionaria replicó mediante una moción en la que citó el *Servicemembers Civil Relief Act*, *supra*, y arguyó que no es aplicable al caso por la falta de una declaración de guerra. Además, peticionó una pensión alimentaria provisional y final correspondiente.[7]

Luego, el 17 de junio de 2022, el recurrido presentó una moción en la que reiteró la solicitud de la paralización del procedimiento judicial.[8] Allí, en virtud del *Servicemembers Civil Relief Act*, *supra*, argumentó que el foro primario debía paralizar los procedimientos hasta que la Marina de los Estados Unidos lo autorizara a salir de su estado de militar activo -al encontrarse a bordo de un barco militar-, para responder a la acción legal en su contra y defender sus derechos a tenor con el debido proceso de ley que le garantiza nuestra Constitución. Asimismo, afirmó que

---

[5] Apéndice de Recurso de *certiorari*, págs. 111-112.

[6] Apéndice de Recurso de *certiorari*, págs. 129 y 131.

[7] Apéndice de Recurso de *certiorari*, págs. 114-117.

[8] Apéndice de Recurso de *certiorari*, pág. 118.

cumplió con la información requerida por el estatuto federal a través de los documentos presentados como anejos.

**Así las cosas, el 17 de agosto de 2022,[9] el Tribunal de Primera Instancia ordenó la paralización de los procedimientos mientras el recurrido se mantuviera en el servicio militar activo. Ello, por entender que el recurrido cumplió con la presentación de la información requerida al amparo de lo establecido en el _Servicemembers Civil Relief Act_, _supra_.[10]**

En desacuerdo, el 30 de agosto de 2022, la peticionaria presentó una moción de reconsideración sobre la paralización.[11] El 12 de septiembre de 2022, **el Tribunal de Primera Instancia denegó la moción de reconsideración** presentada por la peticionaria **a través de una resolución en la que razonó lo siguiente: "Se mantiene vigente la orden de paralización. En este caso el Tribunal no ha relevado del pago de pensión alimentaria a la parte demandada"**.[12]

Inconforme, el 5 de octubre de 2022, la peticionaria presentó un recurso de _certiorari_ ante el Tribunal de Apelaciones. En resumen, alegó que el foro primario abusó de su discreción al aplicar la disposición federal contenida en el _Servicemembers Civil Relief Act_, _supra_, y ordenar la

---

[9] Apéndice de Recurso de _certiorari_, pág. 56.

[10] Advertimos que la información requerida fue acreditada mediante los comunicados presentados que surgen del expediente. Apéndice de Recurso de _certiorari_, págs. 129 y 131.

[11] Apéndice de Recurso de _certiorari_, pág. 57.

[12] Apéndice de Recurso de _certiorari_, pág. 67.

paralización, por entender que solamente es aplicable en tiempos en los que existe una declaración de guerra. De otra parte, arguyó que, si el recurrido estuviera cobijado por la disposición federal, la misma es inaplicable al caso de autos, porque se dejó una menor sin alimentos a pesar del alto interés público y a su vez, el Estado incumplió con el deber de "*parens patriae*" al no velar por el interés óptimo de la menor.

Conforme a lo anterior, la peticionaria expresó que el foro primario erró al no referir el asunto a la Examinadora de Pensiones Alimentarias (EPA) con la finalidad de imponer una pensión provisional, ya que planteó que el recurrido puede comparecer a presentar evidencia sobre sus ingresos a través de su representación legal. Finalmente, solicitó que se deje sin efecto la paralización.[13]

Por su parte, el recurrido compareció mediante una *Moción denegatoria de auto certiorari y/o alegato* y arguyó que el foro primario ejerció correctamente su discreción al ordenar la paralización tras aplicar el *Servicemembers Civil Relief Act*, *supra*. Contrario a lo alegado por la peticionaria, señaló que **el Tribunal de Primera Instancia no lo relevó de continuar pagando la pensión alimentaria fijada por el estado de Virginia, por lo que la pensión alimentaria permaneció intacta.** Así, fundamentó que fue correcta "[l]a decisión del [foro primario] al paralizar los

---

[13] Apéndice de Recurso de *certiorari*, págs. 48-53.

procedimientos de alimentos y su eventual fijación final, mientras subsista la pensión fijada como provisional […]".[14]

Después de considerar los planteamientos de las partes, el 23 de diciembre de 2022, el Tribunal de Apelaciones notificó una *Resolución* mediante la cual denegó expedir el auto solicitado conforme a la Regla 40 de su Reglamento, 4 LPRA Ap. XXII y concluyó lo siguiente:

> **[E]l dictamen recurrido es uno fundamentalmente correcto en derecho** y […] ninguno de los criterios expuestos en la Regla 40 del Reglamento del Tribunal de Apelaciones amerita la necesidad de nuestra intervención. **Evidentemente, el TPI realizó un balance adecuado entre los derechos involucrados, y luego de un ponderado análisis, falló cuidadosamente a favor de los derechos de ambas partes al paralizar. En vista de ausencia de abuso de discreción, ni parcialidad, no intervendremos con la sana discreción del [Tribunal de Primera Instancia].** (Negrilla suplida).[15]

El 9 de enero de 2023, la peticionaria presentó una moción de reconsideración. Luego, el 19 de enero de 2023, el foro apelativo intermedio notificó una *Resolución* que declaró "no ha lugar" la moción y resaltamos que puntualizó en un escolio que:

> El día 20 de abril de 2022, la señora Rivera Ortiz presentó una *Petición* sobre un aumento de pensión alimentaria. **El pasado 12 de septiembre, el tribunal de instancia decretó Orden en la cual expresó "[e]n este caso el tribunal no ha relevado del pago de la pensión alimentaria a la parte demandada".** Por lo que, se mantuvo vigente la obligación de alimentos por la cantidad de $546.00 mensuales y ello fue admitido por el señor Rolón Merced en su *Moción Denegatoria de Auto de Certiorari y/o Alegato*. Más aún, en

---

[14] Apéndice de Recurso de certiorari, pág. 150.

[15] Apéndice de Recurso de *certiorari*, pág. 11.

conformidad con la Ley Orgánica de la Administración para el Sustento de Menores, la determinación o fijación de una pensión alimentaria es efectiva desde la fecha en que se presente la reclamación o modificación. (Negrilla suplida).[16]

En desacuerdo, el 26 de enero de 2023, la peticionaria presentó un Recurso de *certiorari* ante este Tribunal y señaló lo siguiente:

El dictamen del TA en el caso de autos es contrario a lo resuelto por dicho foro intermedio en el caso de Figueroa Padilla, Morales Andújar Ex parte, 2010 TA 972 donde una de las partes invocó el SCRA y se resolvió que el asunto de alimentos se encuentra revestido del más alto interés público y tomando en consideración que el alimentante estaba debidamente representado no procedía la paralización del caso, por lo que existe conflicto entre las decisiones de paneles del TA sobre el asunto en cuestión y lo resuelto en el caso de autos, e incluso al no realizar un análisis "in toto" de las disposiciones del SCRA y obviando que el alimentante no se perjudica toda vez que está debidamente representado con abogado, violentándole así el derecho constitucional a la vida a la alimentista la cual está cobijada en la Constitución.

Erró el TA al concluir que el dictamen recurrido es uno fundamentalmente correcto toda vez que el TPI alegadamente realizó un balance adecuado entre los derechos involucrados por lo que falló cuidadosamente a favor de ambas partes, a pesar de que surgía de los autos que la pensión alimentaria originalmente impuesta por el estado de Virginia cesó cuando la menor advino los 18 años o culminara la escuela superior (hecho admitido por el propio recurrido desde mayo 2022), y que brilla por su ausencia en los autos resolución dictada por el TPI ordenando al recurrido a que continuara pagando dicha pensión previo a ordenar la paralización del caso, por lo que ha mediado prejuicio, parcialidad, error craso y manifiesto en la apreciación de los autos y la prueba, e incluso al concluir implícitamente que la resolución del 12 de septiembre de 2022 y notificada el 14 de septiembre de 2022 donde el

---

[16] Apéndice de Recurso de *certiorari*, pág. 26.

TPI expresó que no había relevado al recurrido de la pensión alimentaria significa que la menor no quedó desprovista de una pensión alimentaria.

Por su parte, el recurrido presentó su *Alegato en oposición*. En síntesis, explicó que solicitó la paralización al amparo de la sección 3932 del *Servicemembers Civil Relief Act*, 50 USCA sec. 3932, mencionó que cumplió con la presentación de la documentación requerida y enfatizó que el foro primario no lo relevó del pago de la pensión alimentaria.

Con el beneficio de la comparecencia de las partes, resolvemos.

## II

### A. Paralización al amparo del Servicemembers Civil Relief Act (SCRA)

En 1940, el Congreso de Estados Unidos implementó el estatuto federal llamado *Soldiers' and Sailors' Civil Relief Act* (SSCRA) aplicable a nuestra jurisdicción con la finalidad de proteger a los miembros de las fuerzas armadas de los Estados Unidos del rigor de los trámites de las acciones civiles de las cuales puedan ser parte.[17]

Con el objetivo de que los miembros de las fuerzas armadas concentren sus esfuerzos y energías en el ejercicio del servicio militar, el mencionado estatuto federal provee

---

[17] En lo pertinente, el Tribunal Supremo de los Estados Unidos puntualizó que "The Soldiers' and Sailors' Civil Relief Act is always to be liberally construed to protect those who have been obliged to drop their own affairs to take up the burdens of the nation." *Boone v. Lightner*, 319 US 561, 575, (1943). Posteriormente, el Máximo Foro federal expresó que "the [statute] must be read with an eye friendly to those who dropped their affairs to answer their country's call." *Le Maistre v. Leffers*, 333 US 1, 6 (1948).

algunos remedios, entre los que se encuentra la suspensión temporera de los procedimientos judiciales o administrativos. Esto, para evitar que se puedan afectar adversamente los derechos civiles de los miembros del cuerpo militar durante la prestación del servicio.[18]

De este modo, todo miembro del servicio militar que sea compelido a una causa judicial o administrativa ante un foro que esté sujeto a la aplicación de la mencionada ley, está facultado para solicitar la paralización correspondiente. Ello, siempre que cumpla con el elemento de estar o haber estado activo en el servicio militar.[19] De ser concedida la paralización, la misma constituye una posposición de los procedimientos, hasta tanto el miembro activo sea relevado de su servicio militar y pueda comparecer a defenderse.[20] Por consiguiente, la paralización en controversia se perfila como un mecanismo de defensa y no como un mecanismo de opresión sobre la parte contraria.[21]

En lo concerniente a la controversia, antes de la enmienda de 2003 (que discutiremos más adelante), la sección 521 del SSCRA disponía lo siguiente sobre la paralización:

> **At any stage thereof any action or proceeding in any court in which a person in military service is involved, either as plaintiff or defendant,**

---

[18] 50 USCA sec. 3902.

[19] Véanse: 50 USCA secs. 3931 y 3932.

[20] *Coburn v. Coburn*, 412 So.2d 947, 949 (Fla. Dist. Ct. App. 1982) ("This section allows a postponement only until such time as a defendant is unhampered by his military service to defend the action.").

[21] *Runge v. Fleming*, 181 F. Supp. 224, 228 (N.D. Iowa 1960) ("[W]hile immunity sought under section 521 may be used as a 'shield for defense', it is not an 'instrument for the oppression of opposing part.'").

> during the period of such service or within sixty
> days **thereafter may, in the discretion of the
> court in which it is pending, on its own motion,
> and shall, on application to it by such person
> or some person on his behalf, be stayed as
> provided in this Act […]** <u>**unless, in the opinion
> of the court, the ability of plaintiff to
> prosecute the action or the defendant to conduct
> his defense is not materially affected by reason
> of his military service**</u>. (Negrilla y subrayado
> suplidos).[22]

Tras evaluar la sección 521 del SSCRA -que equivale a la sección aplicable en este caso- antes de ser enmendada, el Tribunal Supremo de Estados Unidos en *Boone v. Lightner,* 319 US 561 (1943), interpretó que, la paralización de los procedimientos está sujeta a la discreción del tribunal.[23] Así, en el ejercicio de su discreción, adicional al requisito de estar o haber estado activo en el servicio militar, el tribunal debe considerar si el recurrido tiene capacidad para conducir su defensa y ésta no se ve materialmente afectada por razón de su servicio militar.[24]

---

[22] 50 USC App. ant. sec. 521 (1940) (que actualmente es el remedio que establece 50 USC App. secs. 521 y 522).

[23] *Tabor v. Miller*, 389 F.2d 645, 647 (3d Cir. 1968) (citando a *Boone v. Lightner*, 319 US 561 (1943)) ("The court had discretion to determine, from all the circumstances of the case, whether a continuance was justified."). Véase, también, *State ex rel. Swanson v. Heaton*, 22 N.W.2d 815, 816 (Iowa 1946) ("Whether the ability of the service man to prosecute or defend is materially affected, is to be determined by the court in the exercise of a sound judicial discretion.").

[24] *Boone v. Lightner*, *supra*, págs. 565-569 ("The Act cannot be construed to require continuance on mere showing that the defendant was in Washington in the military service. Canons of statutory construction admonish us that we should not needlessly render as meaningless the language which, after authorizing stays, says 'unless, in the opinion of the court, the ability of plaintiff to prosecute the action or the defendant to conduct his defense is not materially affected by reason of his military service.' The Act of 1940 was a substantial re-enactment of that of 1918, 50 U.S.C.A. Appendix, s 101 et seq. The legislative history of its antecedent shows that this clause was deliberately chosen and that judicial discretion thereby conferred on the trial court instead of rigid and undiscriminating suspension of civil proceedings was the very heart of the policy of the Act.").

En otras palabras, **el tribunal tenía discreción para
denegar la paralización y ordenar la continuación del caso
si entendía que el servicio militar ofrecido no afectaba
materialmente la habilidad del miembro del servicio militar
a presentar su defensa o su reclamo durante el trámite
judicial.**[25] Conforme a lo anterior, el tribunal debía
considerar los siguientes criterios: "(1) the servicemember
(or a person on his or her behalf) applied for the stay and
(2) the court determined that the servicemember's ability
to prosecute or defend the action was, in fact, materially
affected by reason of his or her military service".[26]

**Ahora bien, en 2003 el mencionado estatuto federal fue
enmendado e intitulado como *Servicemembers Civil Relief Act*
(SCRA)**[27] con la finalidad de clarificar el lenguaje del
SSCRA, incorporar las interpretaciones judiciales

---

[25] *Hernandez v. Hernandez*, 906 A.2d 429, 435-436 esc. 3 (Md. Ct. Spec.
App. 2006) ("That is, under the previous iteration of the statute, the
court had discretion to deny a stay if it believed the servicemember's
military service would not materially affect his ability to prosecute
or defend the action. In 2003, Congress amended the Act, renaming it
the "Servicemember's Civil Relief Act," and removing the discretionary
power of the court to deny a stay […].").

[26] *In re Marriage of Herridge*, 279 P.3d 956, 960 (Wash. Ct. App. 2012).
Asimismo, en *Childs v. Childs*, 310 P.3d 955, 959-960 (Alaska 2013), el
Tribunal Supremo de Alaska afirmó que el análisis presentado era
aplicable al estatuto anterior que cambió tras la enmienda realizada.
Ello, al expresar lo siguiente: "Although our prior decisions relating
to the Act have not dealt specifically with the requirements of §
522(b)(2), numerous courts, including the United States Supreme Court,
have concluded that a servicemember invoking a stay under the Act must
make a showing that the servicemember's rights or ability to present a
defense would be materially affected by the servicemember's military
duties. A servicemember is not entitled to a stay simply by virtue of
serving in the armed forces; the servicemember must show that, due to
military service, the servicemember's ability to raise a claim or
defense would be prejudiced if a stay were denied."

[27] Véase Ley Pub. Núm. 108-189 de 19 de diciembre de 2003 (117 Stat.
2835) que enmendó el *Soldiers' and Sailors' Civil Relief Act of 1940*.

realizadas y reflejar el desarrollo de la vida Americana desde 1940.[28]

Entre las enmiendas, se produjo un cambio en la discreción que otorgaba el estatuto anterior en la sección 3932 del SCRA. Ello, porque el cumplimiento de los requisitos relacionados con la presentación de la información requerida tras la enmienda **implica que la orden de paralización por parte del foro primario será de carácter mandatorio por un mínimo de 90 días**.[29] Además de surgir claramente del estatuto, esto es cónsono con las interpretaciones realizadas por tribunales de distintos estados.[30] En lo pertinente, la sección 3932 del precitado estatuto federal dispone lo siguiente:

> **(a) Applicability of section**
> **This section applies to any civil action or proceeding, including any child custody proceeding, in which the plaintiff or defendant**

---

[28] Véase D. Dahle, *The Servicemembers Civil Relief Act of 2003 Protecting the Rights of Guard and Reserve Members*, 48 ADVOCATE 13, 13 (2005).

[29] *In re Marriage of Herridge*, *supra* ("Congress substantially amended the Act in 2003. As discussed above, the SCRA now mandates that an application for a stay by a servicemember contain specific information in support of that request. […] [T]hose courts that have assessed the effect of the 2003 amendments have generally held that a servicemember must now comply with the express requirements of that statute in order to be entitled to a mandatory stay of proceedings."). Véase, también, M. Dahle, *supra*, pág. 14 ("In Section 522, in actions where the member has notice, the SCRA provides for an automatic mandatory procedural stay for a minimum of 90 days, upon the application of the member.").

[30] Véanse, además: *In re Walter*, 234 S.W.3d 836, 837 (Tex. App. 2007) ("According to that statute [50 USCA sec. 3932], the trial court shall, upon application by a person in military service, stay a civil action for a period of not less than 90 days if two conditions are met […]. The two conditions must be included in the application […]."); *In re Marriage of Bradley*, 137 P.3d 1030, 1034 (Kan. 2006) ("A stay of proceedings [in 50 USCA sec. 3932(b)(1)] is mandatory upon a properly supported application by the servicemember, but not so if the statutory conditions are not met."); *King v. Irvin*, 614 S.E.2d 190, 193 esc. 12 (Ga. Ct. App. 2005) ("In 2003, however, Congress amended the Act to require that servicemembers include in their stay applications specific information not provided.").

**at the time of filing an application under this section--**
(1) is in military service or is within 90 days after termination of or release from military service; and
**(2) has received notice of the action or proceeding.**

**(b) Stay of proceedings**
**(1) Authority for stay**
At any stage before final judgment in a civil action or proceeding in which a servicemember described in subsection (a) is a party, **the court may on its own motion and shall, upon application by the servicemember, stay the action for a period of not less than 90 days, if the conditions in paragraph (2) are met**.

**(2) Conditions for stay**
An application for a stay under paragraph (1) shall include the following:

**(A) A letter or other communication setting forth facts stating the manner in which current military duty requirements materially affect the servicemember's ability to appear and stating a date when the servicemember will be available to appear.**

**(B) A letter or other communication from the servicemember's commanding officer stating that the servicemember's current military duty prevents appearance and that military leave is not authorized for the servicemember at the time of the letter.**

**(c) Application not a waiver of defenses**
An application for a stay under this section does not constitute an appearance for jurisdictional purposes and does not constitute a waiver of any substantive or procedural defense (including a defense relating to lack of personal jurisdiction) […]. (Negrilla y subrayado suplidos).[31]

A tenor con lo antes expuesto, para que determinado procedimiento judicial o administrativo promovido en contra de un miembro del servicio militar quede sujeto a la

---

[31] 50 USCA sec. 3932.

paralización contemplada en el estatuto, la solicitud correspondiente debe presentarse dentro del periodo en que se encuentre activo en el servicio militar, o durante los 90 días siguientes a la fecha de terminación de sus funciones. Específicamente, debemos resaltar que, de conformidad con la precitada disposición, para que la petición de paralización mencionada sea oponible, **debe haber mediado la notificación de la causa de acción o procedimiento al solicitante del remedio.**

Entonces, según surge del estatuto, el tribunal (*motu proprio*) podrá ordenar la paralización sin contar con una solicitud del miembro del servicio militar. **Sin embargo, en este caso, nos encontramos con una petición presentada por el recurrido. En ese escenario, la orden de paralización solamente estará condicionada a que la petición correspondiente se acompañe con una carta o comunicación que acredite la imposibilidad del solicitante para comparecer a los trámites judiciales o administrativos de los cuales sea parte.** La comunicación deberá establecer la forma en que las responsabilidades que ejerce en el servicio militar afectan materialmente su capacidad de comparecer, y a su vez, debe hacer constar la fecha desde la cual estará disponible para comparecer.

**De igual forma, la eficacia de la solicitud de paralización quedará supeditada también a la presentación de una carta o comunicación** suscrita por el *Commanding Officer* del solicitante para certificar que las tareas

militares que a este le han sido delegadas le impiden comparecer a los procedimientos y que, al momento de la comunicación, no es acreedor de una licencia especial o permiso para interrumpir su servicio militar. **Ciertamente, si la petición cumple con los requisitos mencionados, el foro primario no tendrá discreción para denegar la paralización. Finalmente, la paralización no podrá ser otorgada por un término menor a 90 días.**

Por otra parte, cónsono con los criterios esbozados, debemos mencionar que el precepto federal en cuestión provee discreción al tribunal para que, sujeto al cumplimiento de ciertos criterios, pueda extender la paralización de una acción judicial o administrativa en beneficio de un miembro del servicio militar. Al respecto, la precitada sección 3932, en su inciso (d) establece:

> **(d) Additional stay**
> **(1) Application**
> A servicemember who is granted a stay of a civil action or proceeding under subsection **(b) may apply for an additional stay based on continuing material affect of military duty on the servicemember's ability to appear.** Such an application may be made by the servicemember at the time of the initial application under subsection (b) or when it appears that the servicemember is unavailable to prosecute or defend the action. **The same information required under subsection (b)(2) shall be included in an application under this subsection.**
> (2) Appointment of counsel when additional stay refused
> If the court refuses to grant an additional stay of proceedings under paragraph (1), the court shall appoint counsel to represent the servicemember in the action or proceeding. (Negrilla suplida).[32]

---

[32] Íd.

Lo anterior significa que, la solicitud para la extensión de una paralización decretada tiene que fundamentarse en que no ha cesado la imposibilidad de comparecer por los deberes que ejerce en el servicio militar. Al mismo tiempo, su eficacia estriba en que se presente dentro de la vigencia de la paralización original o en el momento en que surja el impedimento, así como en que se acompañe la petición con la misma documentación exigida en los incisos (b)(2)(A) y (B) de la precitada sección 3932.

**Finalmente, en el análisis de la totalidad del estatuto federal, debemos mencionar que la sección 3931 posee también la protección de la paralización aplicable a un escenario distinto con la posibilidad de dictar sentencia en rebeldía** cuando el militar en el servicio activo no ha sido notificado ni ha comparecido al pleito en ningún momento.[33] De todas formas, **la sección 3931 en los incisos (e) y (f) excluye expresamente el remedio de la paralización de la sección 3932 aplicable a la controversia en este caso al disponer que:**

---

[33] La Sección 3931 establece lo siguiente sobre el remedio de la paralización:
(a) Applicability of section
This section applies to any civil action or proceeding, including any child custody proceeding, in which the defendant does not make an appearance.
.   .   .   .   .   .   .   .   .
(d) Stay of proceedings
In an action covered by this section in which the defendant is in military service, the court shall grant a stay of proceedings for a minimum period of 90 days under this subsection upon application of counsel, or on the court's own motion, if the court determines that--
(1) there may be a defense to the action and a defense cannot be presented without the presence of the defendant; or
(2) after due diligence, counsel has been unable to contact the defendant or otherwise determine if a meritorious defense exists. 50 USCA sec. 3931 (a) y (d).

(e) Inapplicability of section 3932 procedures
A stay of proceedings under subsection (d) shall not be controlled by procedures or requirements under section 3932 of this title.

(f) Section 3932 protection
If a servicemember who is a defendant in an action covered by this section receives actual notice of the action, the servicemember may request a stay of proceeding under section 3932 of this title.[34]

### i. Aplicación del SCRA en procedimientos de pensión alimentaria

En cuanto a la aplicación de la legislación federal en los procedimientos de pensión alimentaria, en *Shelor v. Shelor*, 383 S.E.2d 895 (Ga. 1989) el Tribunal Supremo de Georgia sostuvo que las modificaciones temporeras de pensión alimentaria, en general, no afectan materialmente los derechos del militar en servicio, porque son de carácter interlocutorio al estar sujetas a modificación. Posteriormente, cónsono con el carácter temporero de la orden, en *Lenser v. McGowan*, 191 S.W.3d 506 (Ark. 2004), el Tribunal Supremo de Arkansas indicó que una orden de paralización emitida al amparo del SCRA no impide que se emita una orden temporera sobre la custodia del menor hasta que pueda comparecer el militar en servicio.[35]

Por otro lado, tras la enmienda del SCRA en 2003, la Administración para el Sustento de Menores (ASUME) emitió

---

[34] 50 USCA sec. 3931 (e) y (f).

[35] *Shelor v. Shelor*, 383 S.E.2d 895 (Ga. 1989); *Lenser v. McGowan*, 191 S.W.3d 506 (Ark. 2004)("The circuit court has jurisdiction to consider matters such as support, custody, and other similar matters that arise during the course of the stay."). Véase, también, M. E. Sullivan, *A Judge´s Guide to the Servicemembers Civil Relief Act*, https://www.nclamp.gov/media/425665/jdg-guide.pdf (última visita, 10 de diciembre de 2024).

una Orden Administrativa en la que, entre otras cosas, explicó y discutió las mejores prácticas sobre la aplicación de la nueva legislación federal y en lo pertinente, puntualizó lo siguiente sobre los alimentos:

> **5. Paralización Automátic[a]. La nueva ley ordena una paralización automática de por lo menos 90 días a petición del militar.** La aplicación de la paralización debe incluir: a) una carta u otra comunicación declarando como las obligaciones militares presentes afectan la habilidad del militar para comparecer y declarar una fecha en que el militar estará disponible para comparecer y b) una carta u otra comunicación del comandante declarando que las obligaciones militares actuales del militar impiden su comparecencia y que el permiso militar para ausentarse no está autorizado para el militar al momento de la carta. Ver § 522(b)(2) […].
> 
> .    .    .    .    .    .
> 
> **10. Alimentos.** En muchos casos, la paga de un progenitor puede aumentar o reducirse dramáticamente como resultado de la activación […]. La paga militar incluye pagas especiales libre de impuestos y mesadas que son incluidas en el ingreso bruto […]. Dineros ganados en zona de combate son libres de impuesto. **Muchos tribunales han acordado expeditar las vistas para militares desplegados o entrar órdenes interinas hasta tal tiempo en que ellos comparezcan. Si no existe una orden o acuerdo de alimentos, la Marina o la Infantería de Marina tienen sus propias guías recomendadas de alimentos […].** (Negrilla suplida).[36]

### III

La controversia ante nuestra consideración es sobre una orden de paralización emitida por el foro primario durante los procedimientos relacionados con una pensión alimentaria a solicitud de un militar en el servicio activo

---

[36] OA-2004-04 *Cumplimiento con los requisitos del Servicemembers Civil Relief Act of 2003.*

al amparo de lo establecido en la sección 3932 del *Servicemembers Civil Relief Act*, 50 USCA sec. 3901 *et seq*. Veamos.

La peticionaria plantea que el Tribunal de Primera Instancia erró al ordenar la paralización sin fijar una pensión provisional a sabiendas de que la pensión fijada originalmente por el estado de Virginia cesó en mayo de 2022 cuando la menor advino los 18 años y tuvo el efecto de dejarla desprovista de alimentos durante el servicio militar del recurrido.[37] Así, alega que abusó de su discreción ante el alto interés público que poseen los alimentos de un menor.[38] De otra parte, aduce que el Tribunal de Apelaciones y el foro primario fallaron al no considerar que el recurrido ha tenido representación legal todo el tiempo y su habilidad de conducir su defensa no se ha visto afectada materialmente por el servicio militar. Más aún, cuando la peticionaria entiende que la evidencia a presentarse en el trámite procesal no requeriría de su presencia.[39]

Por su parte, el recurrido arguye que solicitó la paralización al amparo de la sección 3932 del *Servicemembers Civil Relief Act*, *supra*, y cumplió con la presentación de la documentación requerida en el estatuto. Conforme a ello, plantea que el foro primario en el ejercicio de su discreción

---

[37] Recurso de *certiorari*, págs. 2-3.

[38] Recurso de *certiorari*, pág. 23.

[39] Recurso de *certiorari*, págs. 19-20.

no lo relevó del pago de la pensión alimentaria. Así, asevera que el referido foro estableció una pensión provisional a favor de la menor que eventualmente será atendida en una vista de pensión final. Afirmó que continúa pagando la pensión según fue implementada en el estado de Virginia y resaltó que no posee ningún retraso en el pago.[40]

De entrada, según surge de los autos del caso, como hecho incontrovertido, el recurrido se encuentra en el servicio activo de la Marina de los Estados Unidos fuera de la jurisdicción del tribunal. Por ello, está protegido por el *Servicemembers Civil Relief Act*, *supra*, y tiene derecho a beneficiarse de los remedios que provee el estatuto como lo es la paralización. Un remedio que, según mencionamos, se fundamenta en evitar que se vean afectados de manera adversa los derechos civiles de los miembros de las fuerzas armadas mientras prestan sus servicios en favor de los Estados Unidos.

En virtud de lo discutido en el segundo acápite sobre el estatuto federal y la sección 3932 aplicable al caso, debemos resaltar que la peticionaria presenta un análisis parcialmente incorrecto del derecho aplicable en base a los criterios que otorgaban discreción al tribunal al fundamentar su reclamo en la interpretación que se realizaba antes de la enmienda al estatuto federal en el 2003. **Según**

---

[40] Conforme a esto, el recurrido citó que existe un principio naval establecido [32 CFR sec. 733.3 – *Information and policy on support of dependents*] por el que continuará pagando su obligación alimentaria hasta que el foro primario disponga de forma distinta.

**la disposición federal enmendada, la protección de la paralización que provee el SCRA en la sección 3932 es de carácter mandatorio tras el cumplimiento de los requisitos presentados.**

La paralización al amparo de la sección 3932 del *Servicemembers Civil Relief Act*, *supra*,[41] aplicable en este caso, primeramente, requiere que el solicitante se encuentre activo en el servicio militar o durante los 90 días siguientes a la fecha de terminación de sus funciones. Además, el militar en el servicio debe ser notificado sobre la causa de acción o el procedimiento y solicitar el remedio de la paralización. Después de cumplir con lo anterior, al Tribunal de Primera Instancia le correspondía examinar el cumplimiento de la presentación de los documentos y la información requerida en la sección 3932, a saber: (A) Una carta o comunicación que acredite la imposibilidad del solicitante para comparecer a los trámites judiciales o administrativos al establecer la forma en que las responsabilidades que ejerce en el servicio militar afectan materialmente su capacidad de comparecer, y además, hacer constar la fecha desde la cual estará disponible para comparecer. (B) Una carta o comunicación suscrita por el *Commanding Officer* del solicitante en la que certifique que las tareas militares delegadas le impiden comparecer a los procedimientos y que, al momento de la comunicación, no es acreedor de una licencia

---

[41] 50 USCA sec. 3932.

especial o permiso para interrumpir su servicio militar. Claramente, tras cumplir con los requerimientos mencionados, procedía la orden de la paralización de forma mandatoria como lo ordenó el foro primario.

Ahora bien, en este caso, el Tribunal de Primera Instancia ordenó la paralización de los procedimientos sobre la reclamación de pensión alimentaria de la peticionaria. Una determinación fundamentada en el cumplimiento de los requisitos de la sección 3932 del SCRA por parte del recurrido. Así, después de ordenar la paralización, el 12 de septiembre de 2022, el foro primario denegó una moción de reconsideración presentada por la peticionaria a través de una resolución en la que reiteró que mantenía la paralización, y **puntualizó que el tribunal no había relevado al recurrido del pago de la pensión alimentaria impuesta** por el estado de Virginia.[42]

Particularmente, en cuanto a la aplicación de la paralización como un remedio en los casos de familia, debemos resaltar que las secciones discutidas expresamente establecen que serán aplicables en toda acción civil hasta en los casos de custodia y conforme a ello, en la jurisprudencia esbozada se observa la aplicación a los distintos procedimientos que incluyen los casos de familia. Más aún, cuando se ha determinado que el carácter interlocutorio de las modificaciones temporeras en los casos

---

[42] Apéndice de Recurso de *certiorari*, pág. 67.

de familia no afecta los derechos del militar en servicio.

Tras evaluar la totalidad de la legislación federal y al considerar el carácter mandatorio de la paralización como resultado del cumplimiento de los requisitos, **concluimos que el foro primario actuó correctamente al no relevar al recurrido del pago de la pensión alimentaria con el efecto de implementar una orden de pensión provisional durante la orden de paralización emitida con el fin de mantener el "*status quo*"**. Una actuación que es cónsona con las interpretaciones realizadas que resaltan que el carácter interlocutorio de una orden no es contrario al *Servicemembers Civil Relief Act*, *supra*.

Finalmente, los foros primarios no pueden ignorar que, en los casos de los alimentos de un menor, tras llevar a cabo un balance de intereses, deberán considerar y evitar que el menor quede desprovisto de su derecho a una pensión alimentaria. En el caso de autos, el Tribunal de Primera Instancia no relevó del pago de pensión al recurrido, lo que tiene el efecto de acoger la pensión establecida como una pensión provisional que, posteriormente será evaluada y considerada en el momento en que se levante la paralización.[43] Así, somos del criterio de que el Tribunal de Apelaciones actuó correctamente al confirmar la determinación del foro primario.

---

[43] Véase *Resolución* emitida por el Tribunal de Primera Instancia el 12 de septiembre de 2022. Apéndice de Recurso de *certiorari*, pág. 67.

**IV**

Por los fundamentos antes expuestos, se confirma la *Resolución* emitida por el Tribunal de Apelaciones y devolvemos el caso al Tribunal de Primera Instancia para que continúe los procedimientos conforme a lo aquí resuelto.

Se dictará Sentencia de conformidad.

Erick V. Kolthoff Caraballo
Juez Asociado

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Maribel Rivera Ortiz

    Peticionaria

        v.                CC-2023-0076      Certiorari

Melvin Rolón Merced

    Recurrido

SENTENCIA

En San Juan, Puerto Rico, a 17 de marzo de 2025.

        Por los fundamentos antes expuestos en la Opinión que antecede la cual se hace formar parte íntegra de la presente, se confirma la *Resolución* emitida por el Tribunal de Apelaciones y devolvemos el caso al Tribunal de Primera Instancia para que continúe los procedimientos conforme a lo aquí resuelto.

        Así lo pronunció, manda el Tribunal y certifica el Secretario del Tribunal Supremo. La Jueza Asociada Rivera Pérez no interviene.

                          Javier O. Sepúlveda Rodríguez
                        Secretario del Tribunal Supremo